MILLER FRANCIS AND ANOTHER, ADM'RS v. JOHN HALL.

Under the laws in force in 1837 the heirs of a deceased person had the right, either expressly or by implication, to accept the estate, becoming responsible for the debts; and especially if there were no debts had they the right to accept and distribute immediately without the incumbrance of an administration.

Where the deceased died in 1837, leaving no debts, or at least a trivial amount, and a few months after the decease, the heirs, those present acting for themselves and those absent, by a curator under the sanction of the Probate Court, agreed to divide the estate, the perishable property to be sold and the proceeds paid over by an "agent" whom they appointed, and the real estate to be divided in a manner subsequently to be agreed upon, and the agent took charge of the trust and made payments in full or in part to all the heirs, and the land was divided in pursuance of the agreement, and all the proceedings under the agreement returned to the Probate Court; it was held that the act of the heirs in making the agreement and appointing the agent was an acceptance of the estate, which closed it against a general administration; after which nothing remained to be done but to carry the agreement into specific execution, and if the agent made default, the party who had a right to complain and seek redress for the wrong was not the estate or succession as a fictitious being, but the injured heir or heirs; that general letters of administration *de bonis non*, granted to the plaintiffs in 1849, were granted without competent authority, and the grant was a nullity: and further the Court said: "If it be conceded that an administration was an essential "prerequisite to the passing of the property to the heirs, and if the defendant "("the agent") had not in fact been administrator, or the acts done were not "in due course of administration, it would open the whole successsion and all "the proceedings to examination and adjustment. But upon no principle could "such a course be tolerated. It could not be permitted that heirs should be "ousted or disturbed after ten or eleven years possession for the mere purpose "of putting an estate through an administration, especially where it would re- "sult in nothing but injury to all in interest."

Appeal from Washington.

*N. Holland*, for appellant.

*J. E. Shepard* and *Giddings & Giddings*, for appellee.

HEMPHILL, CH. J. The prominent facts in this case are that Joel Lakey departed this life in 1837, leaving a will, which on the petition of Miller Francis and wife, the plaintiffs

in this suit, was established in the Probate Court of Austin county; but the decree being reversed by the District Court of Washington county, and an appeal having been taken to the Supreme Court, the heirs for the purpose of restoring harmony in the family and for the speedy adjustment of their rights, agreed on the 30th October, 1837, to compromise the controversy, and that all the property should be divided equally between the nine heirs of the estate, the widow of the deceased taking a child's or the one-ninth part. They agreed that the personal property should be sold on a credit of twelve months, the purchasers giving bond and security payable to the heirs, and authorized John Hall, the defendant in this suit, to sell the said property and make title for the heirs, requiring him to give bond and security for the faithful performance of his duties and the payment of the proceeds of the said property; and also that on the application of any heir, they would agree among themselves as to the mode of further disposing and dividing the property, and if they could not agree they would proceed to have commissioners legally appointed. The absent heirs assented to this compromise, through their curator, who acted under the sanction and decree of the Probate Court. The property was sold in conformity with the agreement, and accounts of the sales were filed with the Probate Court. The land belonging to the estate was subsequently in 1841 divided by agreement between the heirs, the plaintiffs in this suit, Miller Francis and wife, being secured in the additional sum of one thousand dollars allowed them by the former agreement in consideration of their having entered into the compromise.

John Hall, the defendant, was not appointed the administrator of the estate of Joel Lakey; and when required by the Probate Court, in 1841, to account as such, he denied that there was such an appointment, and if it in fact existed he tendered his resignation. In his acts he was sometimes styled as administrator, and sometimes as agent of the heirs of Joel Lakey. It appears that in 1838 and 1839 some of the heirs

received large portions of their distributive shares; that in 1844 the plaintiffs, Miller Francis and wife, claiming through the wife as one of the heirs, acknowledged the receipt of their proportionate share, and gave a full release and acquittance to the defendants, certifying also that the full share of Nancy Lakey, the widow of the deceased, had been previously paid. There were some subsequent payments to heirs, prior to the institution of this suit, and some payments have been made since it was commenced. There was also evidence of payments for taxes.

It appeared that two of the absent heirs had received their portions and were fully satisfied: another absent heir was paid during the progress of the suit; and it was proven that all the heirs had received their shares of the land, and that they had not been heard to complain. The amounts paid were large, and by the estimate of defendant's counsel exceeded even the aggregate of the sales. In 1849, letters of adminisistration *de bonis non* were granted to the plaintiffs, and this suit was subsequently prosecuted.

It will be unnecessary to notice in detail the pleadings, or specially, the instructions given or refused, or other matters occurring during the progress of the trial. The allegations of the plaintiffs sought to charge the defendant on various grounds, sometimes charging him as administrator and at others as trustee, &c., and the defence as often varied its face and shape to meet the supposed exigencies of the case.

Of the twenty-one instructions asked by plaintiffs, none but but two were refused; and of the fourteen sought by defendant, all but one were given. The facts were fairly and fully before the jury, the law was dealt out to them in profusion, and a verdict was found for defendant.

The appellants have assigned eight grounds of error, which it will not be necessary to consider separately or examine minutely.

There are some prominent facts in the cause that are decisive of the merits of this controversy. In the first place, it

appears that no debts, or at least but a trivial amount was owing by the deceased. An attempt at administration was in effect defeated; and in a few months after the decease, the heirs (those present acting for themselves, and those absent, by a curator) agreed to divide the property, appointing the defendant their agent to make sales and to collect and pay over the proceeds. This was in effect an acceptance of the estate by the heirs, obviating the necessity of administration; or if the facts that the agreement was with the sanction of the Probate Court, and proceedings under it were reported to that Court, made the whole an act of administration, yet even in that view the proceeding was one of distribution, and for the purpose solely of dividing the effects among those to whom they belonged, and by whom they were claimed.

The persons having the exclusive right to the succession had agreed to its distribution, and the arrangement had received judicial assent and sanction; what more remained than to carry this agreement into specific execution, according to its terms? And if default was made by the agent, who had the right to complain of such default, and to seek redress for the wrong? Not the estate generally, not the succession as a fictitious being, but the heirs who had accepted and taken possession for themselves, and who had voluntarily nominated and appointed their agent.

The succession was in effect closed by the act of the parties who alone had any interest.

In fact it was never opened for the purposes of general administration. There was no reason why it should. There were substantially no debts; and whether there were or not, the heirs under the then existing laws had the right, either expressly or by implication, to accept the estate, becoming responsible for the debts; and especially if there were no debts, had they the right to accept and distribute immediately without the incumbrance of an administration, the only object of which under such circumstances would be to prepare the estate for distribution. This was the course pursued by the heirs in

this case, whether wisely or not, is immaterial to the question. Their act had the effect of closing the estate against general administration, of vesting the property, *sub modo*, in themselves, of leaving nothing to be done except to enforce the specific execution of the contemplated division; consequently the Court had no competent authority to grant letters of general administration, and its grant is, and must be regarded as a nullity. (Fisk v. Norvel, 9 Tex. R. 17; Blair v. Cisneros, 10 Id. 34.)

The heirs were competent to the assertion of their own rights. They needed not the aid of an administrator. There was no legal necessity for his appointment; nor under the circumstances was there any authority in law for disturbing the heirs in possession, or wresting the property from the control and disposal of those to whom it belonged and who had asserted their rights as owners.

The grant of administration is *de bonis non*, or upon the effects still unadministered. What is the effect of such grant? If it be conceded that an administration was an essential prerequisite to the passing of the property to the heirs, and if the defendant had not in fact been administrator, or the acts done were not in due course of administration, it would open the whole succession, and all the proceedings to re-examination and adjustment. But upon no principle could such results be tolerated. It could not be permitted that heirs should be ousted or disturbed after ten or eleven years' possession, for the mere purpose of putting an estate through the course of an administration, especially where it would result in nothing but injury to all in interest; where its only effect would be to wrest property from its owners to their vexation and annoyance, and return it again burthened with all the charges of its transmutation. But if the agreement, and the acts of the heirs and their agent, the defendant, be regarded as acts of administration, then what remained undone of which these plaintiffs as general administrators could complain? The only parties really in interest were the heirs, who had years before agreed

on a division. If this agreement were not fully executed, it was the affair of the heirs, and theirs alone. No one else could interfere or substitute himself to redress their wrongs. But if it be admitted that the plaintiffs in their official capacity could be substituted to these individual interests of the heirs, they would have had no just cause to bring or prosecute this action. The heirs resident in the country had made no complaint. The Courts were always open for redress; and their agent might by compulsory process have been forced, if unfaithful, to discharge the duties of his trust. The absent heirs were paid, with the exception of one, who by her acts repudiated the gratuitous interference of the plaintiffs, and preferring that her portion should go into her own and not into the hands of others, she adhered to the agreement and received from the defendant as agent of the heirs, her distributive share. This swept away even the semblance of pretence for action on the part of the plaintiffs. The absent heirs were satisfied. Those present were either paid or had lost their rights by their negligence and by lapse of time. The plaintiffs in their capacity as heirs, had been fully paid five years before the institution of the action.

But if all the defences arising on purely legal grounds, from acceptance by the heirs, the lapse of time, and the nullity of the grant of administration, had been waived; and if it had been admitted that the plaintiffs in their capacity as administrators *de bonis non*, could maintain this action; yet it appears from the defendant's vouchers which were fortunately preserved through the casualties of time, that he had paid large sums of money in satisfaction of the claims of the heirs and for other necessary purposes, and in fact that he had so discharged his trust as to leave no reasonable ground of complaint. His payments and expenditures together with the amount due his wife as one of the heirs, were nearly if not fully equivalent to the proceeds of the sales, and doubtless it was this view of the facts which induced the jury to bring in their verdict for the defendant.

We are of opinion that there is no error in the judgment and that it should be affirmed.

Judgment affirmed.