GILES H. BURDETT v. ALBERT SILSBEE'S ADM'R, AND OTHERS.

In a case involving the validity of a title under administration in Bastrop county, where a jury had been waived, this Court said : The witnesses for the plaintiffs testified that he (the decedent) had a fixed residence in Matagorda county ; and the witnesses for the defence, on the other hand, testified that his residence, at the time of his death, was in Bastrop county. His permanent residence doubtless had been in the former county until shortly before his death. Wether he had effected a change of residence may be matter of some doubt. However, it was competent for the Court in Bastrop (where administration was first opened) to decide the question, upon the petition for the grant of administration ; and its decision is conclusive until reversed. It cannot be drawn in question in a collateral action. It conferred authority upon the administrator to act in the matter of the administration, until his power expired or was revoked by com-

petent authority ; and the Probate Court of Matagorda county (where adminis-
tration was soon afterwards opened also) had not authority to revoke it ; nor
could its subsequent grant of administration to another, have that effect.

After the Act of 1840 (Hart. Dig. p. 324) the laws of Louisiana ceased to afford
the rule of practice, in the settlement of successions, in our Courts.

The five years limitation under the code of practice of Louisiana, within which
vacant successions were required to be fully administered, and beyond which
the Court had not power to extend the administration, never had any effect upon
any estate administered in this country ; because five years did not elapse from
the period of its introduction (Jan. 1836) until it was superseded by the Act of
1840. (Hart. Dig. p. 324.)

Where letters of administration were issued in November, 1838, and inventory
and appraisement filed, and no further order or paper appeared until January
Term, 1847, when it was ordered that " this case be continued until the next
Term of the Court," and the next order was a judgment *nisi* against the admin-
istrator, for costs of the administration, at November Term, 1847, made final
January Term, 1848, and at November Term, 1848, the administrator filed an
account and prayed an order of sale, the question being as to the validity of the
title of the purchaser at such sale, which had been confirmed, this Court said :
If this were a suit or proceeding in which the authority of the administrator
was directly, instead of being collaterally drawn in question, it might be sub-
jected to a severer scrutiny. But the case is different, where his authority is
thus drawn in question in a collateral action, for the purpose of invalidating
the title of a purchaser at the administrator's sale. Where sales have been
thus made and confirmed by the judgment of a Court of competent jurisdiction,
it is well settled that the judgment, unless impeached for fraud, cannot be
drawn in question in any colateral action or proceeding.

A purchase at administrator's sale, where it proves to be invalid, may constitute
the basis for a claim for valuable improvements made in good faith.

Appeal from Travis. Action of trespass to try title, brought
by Edward A. Pearson, administrator *de bonis non* of Albert
Silsbee, against the appellant, for one third of a league of land,
situated in Travis county. Petition filed May 2nd, 1853. De-
fendant, besides claiming the land as his own property, pleaded
the Statute of limitations of three years, and suggested valu-
able improvements in good faith. Intervention by the heirs of
Silsbee ; jury waived. Judgment for plaintiff.

Statement of facts. Plaintiff's evidence ; transcript of pro-
ceedings of County Court of Matagorda County, petition of
Howell T. Davis, filed Nov. 30th, 1839, representing that Al-
bert Silsbee, of the County of Matagorda, was killed by Indians

while out upon a surveying expedition, some time during the month of October last, having considerable property in his possession belonging to the petitioner and others; that he had left considerable property in the hands of the petitioner, as his agent, for safe custody; that before he left, deceased gave petitioner full authority to manage and transact all his business during his absence; that he has left no will or testament that your petitioner is aware of, and believes he has no relation in this Republic; that petitioner is a considerable creditor of said succession; prayed to be appointed curator and administrator of said succession, &c. Order that the foreing petition be received and that publication be made according to law, signed by two Associate Justices, acting as Judges of Probate, Matagorda, 25th November, 1839. Order Dec. 30th, 1839, appointing said Davis curator and administrator of said succession, upon filing bond &c. March 14th, 1840, appraisers appointed; same day oath of appraisers. March 17, 1840, inventory and appraisement filed, which did not include the land in controversy in this suit. April 27th, 1840, "William Bax- "ter, a Justice of the Peace, by virtue of authority vested in "the Probate Court by law," was appointed administrator of said succession; appeared in open Court and took the oath and gave bond &c.; letters issued. May 25th, 1840, inventory and appraisement filed by Baxter, which did not include the land in controversy in this suit; same day petition and order for sale of all the personal property. Dec. 9th, 1840, return of sale. June 1st, 1841, petition of Baxter to be discharged. June 29th, 1841, return of account by Baxter. June 30th, 1841, petition of Baxter, and order of Court for prolongation of the admin- istration for twelve months. Sept. 1st, 1841, bond renewed. Feb. 23rd, 1843, petition of Baxter for prolongation of the administration. March 1st, 1843, granted; oath taken and bond renewed. April 29th, 1844, list of claims against estate filed, amounting to $150. April 30th, 1844, account filed; publication of notice proved; account approved; administra-

tion prolonged ; oath taken and bond renewed. Sept. 28th, 1844, petition by Baxter, administrator, for order of partition of the assets among the creditors. Sept. 30th, 1844, order granted. June 30th, 1845, final account filed ; publication proved, and administrator dischagred. July 28th, 1845, on petition of George Elliott letters of administration *de bonis non* issued to him ; oath and bond ; inventory and appraisement, not including the land in controversy in this suit. July 30th, 1845, petition of Wm. J. Maynard, a creditor, for an order of sale, to stisfy a judgment recovered in the District Court of Matagorda county, March 3rd, 1845, against William Baxter, administrator of Silsbee. Order granted. Oct. 8th, 1845, account of sales confirmed. Oct. 28th, 1845, petition and order for sale to pay debts ; Dec. 2nd, 1845, return of sale. August 11th, 1846, appraisers appointed. Oct. 6th, 1846, inventory and appraisement filed, consisting of one third of a league of land in Travis county, 1482 acres $1-8 per acre $185 25. Feb. 5th, 1852, petition of Archilaus Silsbee and Howard Silsbee, brothers of Albert Silsbee, for probate of the will of the latter ; Feb. 23rd, 1852, proof of publication ; February, March, and April Terms, continued, ordered to be probated, June 1st, 1852. The will was a letter written Nov. 23rd, 1835, which the deceased, being about to start on hazardous service, wrote to one of his said brothers, in it saying he left his property to his two brothers, Archilaus and Howard. January 17th, 1853, same parties petitioned again for probate of same will, and at January Term, forms of probate of the will were repeated. March 1st, 1853, petition by Archilaus Silsbee and Howard Silsbee for the removal of George Elliott, as administrator, and the appointment of Edward A. Pearson, as administrator with the will annexed. March 2nd, 1853, Elliott removed ; same day petition of Pearson to be appointed administrator pro tem ; same day Pearson appointed administrator pro-tem, with authority, among others, to bring suit for the property in controversy in this suit. Oath and bond. Feb. 28th, 1853,

petition by Pearson for general letters. March 28th, 1853, petition granted; appraisers appointed; oath taken, bond filed; inventory and appraisement, including among other property, the land in controversy, appraised at $8000.

The plaintiff then gave in evidence a patent to Albert Silsbee, for the land in controversy, dated February 5th, 1841; and rested his cause.

The intervenors then proved by three witnesses that they knew Albert Silsbee well, for many years before his death; that he had a permanent home in Matagorda county where he followed farming and stock raising; that he was temporarily absent, locating lands, when he was killed by Indians, about where the city of Austin now is or above; that he had told one of the witnesses that he was going to follow locating lands; had some lands to locate for one witness, and told him he would return, when he left, a short time before his death.

The defendant then offered in evidence the transcript from the records of the County Court of Bastrop county, of the orders and proceedings had in the administration of the estate of Albert Silsbee, in said Court, which was read by permission of the Court, with the exception of the return of sale made by James A. Poage, as attorney of Reese, administrator &c., and the orders thereafter made by the Court in reference to said sale, as set forth in defendant's bill of exceptions:

Petition of Charles K. Reese to the Chief Justice of Bastrop county, stating, that Albert Silsbee and Milton Hicks, both citizens of your said county, were recently cruelly massacred by the Indians; that said decedents left a large amount of unsettled business on hand; that they departed this life intestate. He would therefore pray that he be appointed administrator, &c. Dated Oct. 30th, 1839. "Endorsed filed "Nov. 1st, 1839, and advertised according to law. J. M. "Long, Deputy Clerk." Nov. 11th, 1839, order for Reese's appointment as administrator of both estates. Same day bond of Reese, as administrator of Silsbee. Nov. 25th, 1839, inven-

Burdett v. Silsbee.

tory and appraisement, including the land in controversy in this suit. Petition of Howell T. Davis to the County Court of Bastrop, representing that letters of administration had been improperly and illegally issued to Charles K. Reese, because he says legal notice was not given of the application of said Reese for said letters, the said notice not having been published in a public newspaper (the Austin City Gazette) then published in the county of Bastrop ; that the said Silsbee did not die in the county of Bastrop, but in the county of Milam, and was last before his decease a resident citizen of Matagorda county ; that your petitioner has applied for and will no doubt receive from the Probate Court of Matagorda county, letters of administration on the estate of said decedent &c.; prayer for cancellation of said letters, &c. Endorsed, notice acknowledged, 26th Nov., 1839, Chas. K. Reese. Petition of Charles K. Reese, administrator, same date, stating that since the granting of said letters petitioner has become satisfied that it is for the interest of said estates (of Silsbee and Hicks) that the administration thereof should be removed to the county of Brazoria, because your petitioner saith that the said Hicks resided last before his death mostly in Brazoria county and had his business transactions mostly confined to said county, and that although the said decedent Silsbee mostly resided in the county of Matagorda, last before his death, he was concerned in business in Brazoria county with said Hicks ; that both of said decedents were single men and had no permanent domicil in any county in Texas, but their business was principally in Brazoria county—wherefore your petitioner prays your honor to grant an order that the necessary transcript and vouchers may be forwarded properly authenticated to the Probate Court of Brazoria county, so that your petitioner may be enabled to proceed with said administration in said county, &c. Endorsed notice acknowledged, 26th Nov., 1839, Hill & Anderson, for H. T. Davis. It did not appear that any disposition was made of these applications, or that any further

order was made until January Term, 1847, when, on application of Reese's attorney, it was ordered that this case be continued until the next Term of this Court. The next order was made at November Term, 1847, as follows :

No. 65. Succession of A. Silsbee, deceased.

Whereas, notice having been served upon the administrator, C. K. Reese, commanding him to make out and return to this Court a full showing of the condition of the estate, and said administrator having failed to render an account of the same ; It is ordered that judgment *nisi* be entered against said administrator and the security upon his bond, for costs, and that notice issue to said security to appear at the next Term of this Court, and show cause, if any, why said judgment should not be made final.

January Term, 1848. In this case it is ordered and decreed that judgment final be rendered against the administrator, C. K. Reese, for all costs of Court accrued and unpaid in the administration of said succession, and for which execution may issue.

At the November Term, 1848, Reese filed an account, in which he represented the estate to be indebted to him, and prayed an order for the sale of the third of a league in Travis county, same now in controversy in this suit ; which was granted. December Term, 1848, " action in this case continued until the next term." January Term, 1849, return of sale by " Charles K. Reese, administrator of A. Silsbee, dec'd, by James A. Poage, his attorney," showing sale of the third of a league to Giles H. Burdett, for twenty cents per acre ; " which " was examined by the Court and confirmed, and ordered and " decreed that the administrator make to the purchaser title " in conformity with the Statutes in such case made and pro- " vided." The account of sale was verified by the affidavit of Poage, attorney, &c. There were other papers and orders, after this date, concluding with the revocation of Reese's letters, at November Term, 1852. The transcript was certified to

contain "all the papers, orders and decrees of the County Court," &c.

Defendant then called six witnesses who said they knew Silsbee well in Bastrop county in 1838 and 1839, and testified that Silsbee resided, for some period in 1838 until his death, in Bastrop county. The defendant then proved that his improvements on the land were worth $10,387, that he had been in possession of the land for four or five years (the trial took place at the Fall Term, 1854) and that the land, exclusive of the improvements, was not worth more than $5 per acre.

These were all the facts. There was a bill of exceptions by the defendant, to the ruling of the Court, excluding the return of sale, the order of confirmation, and the deed from Reese as administrator to the defendant. The deed was executed by Reese in person. The defendant then offered the same, in support of his plea of limitation of three years under color of title, but the Court refused to receive them in evidence. It also appeared that the defendant then renewed the offer, to sustain his suggestion of possession in good faith, and claim for valuable improvements, and that the offer was refused.

*Hamilton,* for appellant. The administration was properly granted in Bastrop county, for the proof is ample that the decedent Silsbee had changed his residence from Matagorda to Bastrop ; and the grant of letters in Bastrop was prior to the grant of letters in Matagorda.

It is no objection that no renewal of letters appears affirmatively in the transcript. The renewal of authority will be presumed. (Poor v. Boyce, 12 Tex. R. 440.)

The return of sale is sufficient although not strictly in the form contemplated by the Statute. It gave the Court jurisdiction of the question of sale, and the jurisdiction was exercised in its confirmation, and cannot be collaterally attacked.

The judgment of confirmation upon the return made, so far as its correctness is concerned, is at most but a question of

error, and could only be called in question by a proceeding for that specific purpose. (12 Tex. R. 440.)

In the Opinion of this Court just cited, it is said in answer to the objection that the sale in question was not made nor any order therefor obtained until after the expiration of the time limited for administration, " the plaintiff continued to act in " the character of administrator ; *and her right to act was re-* " *cognized by the Probate Court.* The Court expressly recog- " nized the sale by her in this instance. This was sufficient " to charge her as administratrix at the date of the order and " sale, (Townsend v. Munger, 9 Tex. R. 300,) and if it were " necessary to render her acts, legally done in that character, " valid and binding on the estate, *an extention of the term of* " *administration would be presumed.*" And again, as respects " the rights which third persons may fairly acquire by reason " of such acts, he will be deemed to have had competent author- " ity ; and his acts will bind those claiming the estate as credi- " tors, heirs or distributees."

This disposes of the question of power on the part of Reese as administrator to sell the land in controversy. A further quotation from the same Opinion will settle the question of the insufficiency of the return of sale.

" It would be a dangerous doctrine to hold that the omission " of the administrator to obtain an extension of time or of the " Court to make the entry of such order upon its minutes, " would have the effect to invalidate acts done by the acting " administrator in the due course of administration, to the ex- " tent of defeating the title of a *bona fide* purchaser. If the " mere *errors, irregularities* and *omissions* in such matters, by " *administrators* and *Probate Courts*, should have such effect, " no one would dare to purchase ; for no purchaser would be " secure in his title, and the consequence would be that the pro- " perty of estates subjected to sale would be sacrificed."

This is a full answer to the objection, which the Court below sustained, to the reading in evidence either separately or col-

lectively, the return of sale, the judgment of confirmation and administrator's deed.

The order of sale was adjudged good and the confirmation proved at least that a sale had been made. Was then the irregularity of an act required of the administrator to be performed subsequently to the sale, and over which the purchaser had no control, which he could neither direct or supervise, to defeat the right previously acquired?

The statement of the proposition carries its refutation.

*Oldham & Terrell*, for appellees. I. The evidence shows, that Silsbee resided in Matagorda county at the time of his death. He had his domicil there, and had not acquired one in Bastrop county. It is true thathe intended to remove to the latter county and was preparing to do so at the time of his death.

II. The records show that the administration was granted to Reese under the laws of Louisiana, and was never extended beyond the period of one year. It is insisted that all acts done and performed by Reese after that time were null and void.

The decisions of this Court seem to be to that effect, (Boyle v. Forbes, 9 Tex. R. 35 ; Flores v. Howth, 5. Id. 329.)

III. The record shows that the sale took place ten years, or nearly ten years, after the grant of administration, and nearly five years after the expiration of the limited period of administration. Letters were granted to Reese in Nov., 1839 ; as decided in *Flores v. Howth, Supra,* This administration could not extend beyond five years. That period expired before the passage of the Act of 1846, in which no limit is fixed. After the expiration of that period, succession was closed, the Probate Court had no longer jurisdiction over it ; and a postive order of extension or prolongation would have been invalid.

Whatever presumptions this Court may indulge in favor of

the acts of the inferior tribunals, they will not presume that they acted contrary to law, but in accordance with its provisions. This Court cannot presume that the Probate Court of Bastrop county extended Reese's administration beyond Nov., 1844, because that Court had no power to do it.

The case of Poor v. Boyce, 12 Tex. R. 440, does not, it seems to us, militate against these positions.

The authority of that case presupposes a vacant succession upon which an administrator may be appointed ; that the person assuming to act as administrator, does the same with the sanction of a Court of competent jurisdiction to confer and revoke the power and supervise his acts. The only question in that case was, whether an act, done by the administrator after the expiration of one year from the date of his appointment and within the five years during which the administration might prolonged, was void because no order prolonging the same appeared on record.

In Blair v. Cisnero, (10 Tex. R. 34,) this Court said : "Af-"ter the lapse of a certain time, administration must be con-"sidered as elapsed, whether ever administered in point of 'fact or not," and so in the case of Boyle v. Forbes, (9 Tex. R. 35.)

This position is strengthened and supported by the following authorities. (Ness v. VanSwearington, 7 Serg. & Rawel, 192 ; same case, 10 Serg. & Rawel, 144 ; Mitchell v. Lunt, 4 Mass. R. 654.) These cases decide that there cannot be an executor *de son tort* as to land, for the reason the land vested in the heir and not in the administrator. The administration could not intermeddle with the land. For the same reason, we insist, that after the administration has been closed by the act of the administrator, or by the expiration of the time limited by law, in which an administration may exist, and the property vests in the heir, there cannot be an executor *de son tort*.

Every purchaser at an administrator's sale, can examine the records, to see whether the person acting is really administra-

tor ; he can see also whether the time limited for administration has expired. It would seem to us that the purchaser at such sale would be as much chargeable with the record notices of those facts as he would be of record notice in any other case. If such were not the case, a man insolvent, and who could not be made to respond in damages for his fraudulent acts, might, years after an administration has been closed, obtain letters of administration, and obtain order of sale and sell property which had years previously vested in the heirs ; and the purchaser who is required to look only to the character in which he acts, and the jurisdiction of the Court under whose authority he acts, would obtain a good title and the heirs would be devested of their property. Such cannot be the law. We conceive that after the title to the estate once vests in the heir, it can never be devested, except by his own act. But this case is much stronger for the fourth objection.

IV.  The whole record shows that the administration of Reese and the sales made by him, were fraudulent and void.

*Brewster & West*, also for appellees.


WHEELER, J.  This case appears to come so evidently within the principle of former decisions, that it might be disposed of by a reference to them. (See Dancy v. Stricklinge, *Supra*, and cases there cited.)  But there are grounds assumed in argument for the appellee, which require some examination.

It is insisted that the Probate Court of Bastrop county had not authority to grant administration on the estate of Silsbee in the first instance ; because, it is said, he did not have his residence in that county at the time of his death. The evidence was conflicting as to the residence of the deceased. The witnesses for the plaintiffs testified that he had a fixed residence in Matagorda county ; and the witnesses for the defence, on the other hand, testified that his residence, at the time of his death, was in Bastrop county.  His permanent residence doubt-

less had been in the former county until shortly before his death. Whether he had effected a change of residence may be matter of some doubt. However, it was competent for the Court in Bastrop to decide the question, upon the petition for the grant of administration; and its decision is conclusive until reversed. It cannot be drawn in question in a collateral action. It conferred authority upon the administrator to act in the matter of the administration, until his power expired or was revoked by competent authority. And the Probate Court of Matagorda county had not authority to revoke it; nor could its subsequent grant of administration to another have that effect.

Again, it is insisted that the power of the Court and the authority of the administrator over the succession ceased and were determined at the expiration of the period of five years from the grant of administration. The administration having been granted when the law of Louisiana was of force here, as the law of procedure in such cases, the Court, it is urged, had not the power to extend the administration beyond the period of five years; and consequently, it is a conclusive presumption, that the administration was closed and the property fully vested in the heirs, and not subject to administration after that period. The law of Louisiana, whatever it may have been, or however construed in that State, was superseded, and ceased to afford the rule of practice in this country, before the estate had been in process of administration for the period of one year, by the Act of the 5th of February, 1840. (Hart. Dig. p. 324.) That Act introduced a system for the settlement of the estates of deceased persons, quite dissimilar to the Louisiana system. After its adoption, the laws of that State ceased to afford the rule of practice in our Courts. In fact the five years limitation or restriction referred to, never had effect upon any estate administered in this country; for five years did not elapse from the period of its introduction (Jan. 1836) until, as we have seen, it was superseded. If, indeed, no estate could

have been administered after the lapse of five years from the grant of administration, and all acts done by administrators afterwards were void, very few estates of any considerable amount, would have been fully administered ; and very many of the titles acquired under administrator's sales, might be successfully assailed, in the hands of innocent purchasers and after the lapse of many years. But such was not the law, as applicable to administration here.

There was, it is true, a considerable lapse of time, during which the record of the Probate Court does not show any act of administration. And if this were a suit or proceeding in which the authority of the administrator was directly, instead of being collaterally drawn in question, it might be subjected to a severer scrutiny. But the case is different, where his authority is thus drawn in question, in a collateral action, for the purpose of invalidating the title of a purchaser at the administrator's sale. Where sales have been thus made, and confirmed by the judgment of a Court of competent jurisdiction, it is well settled that the judgment, unless impeached for fraud, cannot be drawn in question, in any collateral action or proceeding.

In the case of McPherson v. Cunliff, (11 Serg. & Rawle, 422,) this subject, and the rules and principles by which Courts are governed upon questions of this nature, respecting the proceedings of Courts having cognizance of the settlement of the estates of deceased persons, were very fully examined by the Supreme Court of Pennsylvania, upon principle and authority. The Court held very decided and emphatic language. "If such a purchaser" (a purchaser at a sale by order of the Orphan's Court) "is not protected," they say, "then, as was "said by the Lord Keeper in Windham v. Windham, 3 Ch. "R. 12, where a like attack was made on a sale under a de- "cree of a Court of Chancery, 'you blow up with gunpowder "the whole jurisdiction,' and here, if the protection be denied "to honest purchasers, you lay a train of gunpowder through

"the whole State, and this decision would be a signal to set "fire to it; for nothing has been more irregular than the prac- "tice of these Courts generally; there may be exceptions, but "they are very rare." (Id. 431.) And the Court proceed to describe the proceedings of the Orphan's Courts, in terms that would very aptly describe and characterize the proceedings of the Probate Courts of this country; especially before their proceedings had been made the subject of much revision and examination in the appellate Court; and when the importance of the rights dependent upon them, and the laws governing them, were less understood or thought of than at present. The case of McPherson v. Cunliff was referred to and approved by the Supreme Court of the United States, in the case of Thompson v. Tolmie. (2 Pet. R. 157, 167.) The Court there say, "The case of McPherson v. Cunliff, 11 Serg. & "Rawle, was one of this description, and brought under the "consideration of the Supreme Court of Pennsylvania, the "effect of a decree of the Orphan's Court, in matters within "its jurisdiction, although founded in a mistake of facts. And "in the discussion of that question, which is gone into very "very much at large, rules are laid down which have a strong "bearing upon the present case. When there is a fair sale, "say the Court, and the decree executed by a conveyance from "the administrator, the purchaser will not be bound to look "beyond the decree, if the facts necessary to give the Court "jurisdiction appear on the face of the proceedings. After a "lapse of years presumptions must be made in favor of what "does not appear. If the purchaser was responsible for the "mistakes of the Court, in point of fact, after they had adju- "dicated upon the facts, and acted upon them, these sales "would be snares to honest men. The purchaser is not bound "to look further back than the order of the Court." The Court cite other cases to the same effect, and particularly the case of Elliott v. Peirsol, (1 Pet. 340,) where they say, "When "a Court has jurisdiction, it has a right to decide every question

" that occurs in the case ; and whether its decisions be correct " or not, its judgment, until reversed, is regarded as binding " in every other Court." This is declared to be the clear and well settled law, as applied to the decisions of County and other Courts having cognizance of the settlement of estates. (2 Pet. 157, 168-9.) Numerous cases might be cited to the same effect ; but it is unnecessary to multiply authorities in support of principles so salutary and firmly established ; on which depend, not only the certainty of the enjoyment of rights secured by the sacred guaranties of the Constitution, but the preservation of social order. There is, perhaps, no country where individual rights, and public policy more strongly require the maintenance of these principles, than in this. Property which, but as of yesterday sold by order of the Probate Court for some trifling sum, then its full and fair market value, by the improvement of the country is enhanced in value a hundred fold. It has been divided and subdivided, and distributed into numerous hands, has been reclaimed from a wilderness state, and become the abode of communities. To unsettle and destroy these titles, by collateral inquiries into the regularity of the proceedings of the Probate Courts, would be attended with the most dangerous and alarming consequences. There is perhaps no country in which the proceedings of those Courts have been conducted generally with greater irregularities, or with less regard to legal forms. Not only was property, especially land, considered, until recently, of very little value ; but the laws governing the settlement of estates were not such as the people had been accustomed to ; were not well understood by them generally, or even by the legal profession ; and in fact were almost wholly unknown to perhaps the greater number of those to whom the exercise of jurisdiction in those Courts was confided. It would be strange, indeed, if it could be shown at this time, that the settlement of any considerable number of estates, administered in the early or even the latter years of the Republic, were conducted conformably to the laws

in every particular. It was frequently difficult for those learned in the law, to tell what law governed in certain cases: and how can it be otherwise than that many errors and irregularities were committed. And when it is considered that all the property of the country must of necessity pass through these Courts once in every few years, it will be seen of what vast importance it is, that those principles of the law which protect the title of the just and rightful possessor, shall be maintained inviolate. If Courts in other countries, where the reasons are less cogent than here, have maintained those principles as applied to cases like the present, with so much earnestness, and even vehemence of language, how much more should they be maintained in this country, where towns and villages and cities are springing up in the wilderness as if by magic, and the refuse lands of yesterday are the cities of the elegant, tasteful and costly mansions of to-day.

The present case affords a striking illustration of the manifest injustice of maintaining the doctrine, contended for by the appellees. A tract of wild land, sold no longer ago than in 1849 at public sale, at twenty cents per acre, is now worth five dollars per acre, and the improvements upon it are worth ten thousand dollars. And on the doctrine that the proceedings of the Probate Court, not being, or not appearing to be regular, they were void and the title of the purchaser a nullity, the defendant was held not to be a possessor in good faith, and not entitled to anything for his improvements, though there was no evidence that he had any participancy in or knowledge of the irregularities of the Court. On this ground alone, it is conceived the judgment must have been reversed. But our opinion on the principal question, of the title, renders this error of the Court immaterial.

If the plaintiff can prove, as he insists, that there was fraud in the sale, to which the defendant was privy, or of which he is chargeable with notice, then, it is true, his title will not protect him either in his possession or his improvements. But if

the sale was fairly made, and the defendant was a *bona fide* purchaser for value, his title will not be affected by the irregularities in the proceedings of the administrator and the Probate Court. The judgment is reversed, and the cause remanded for further proceedings.

Reversed and remanded.