No. 2152.

## J. S. MARTIN ET AL. *v.* LUCY S. ROBINSON ET AL.

1. COLLATERAL ATTACK—JURISDICTION.—When a court of record of general jurisdiction over all matters pertaining to the estates of deceased persons has assumed to exercise jurisdiction in a given case, all presumptions are in favor of the validity of its proceedings; and if the record of such a court shows that the steps necessary to clothe it with power to act in the given case were taken, or if the record be silent upon this subject, then its judgment, order or decree must be held conclusive in any other court of the same sovereignty, when collaterally attacked.

2. JURISDICTION.—When a person dies, leaving to the jurisdiction of the probate court an estate, then, and not before, the court has power to inquire and determine the existence or non-existence of every fact necessary to be determined in ascertaining whether it has jurisdiction in the particular case, and the extent to which it ought to be exercised.

3. SAME.—Such a court must determine the existence of the facts which make it proper that administration should be granted in the county in which the court sits; if it comes to an erroneous conclusion and orders the issuance of letters of administration, its judgment is voidable and not void.

4. CASES REVIEWED.—Blair v. Cisneros, 10 Texas, 35; Fisk v. Norvel, 9 Texas, 15; Boyle v. Forbes, 9 Texas, 36; Wardrup v. Jones, 23 Texas, 489; Cochran v. Thompson, 18 Texas, 652; Merriweather v. Kennard, 41 Texas, 273; Duncan v. Veal, 49 Texas, 604, are all reviewed in the opinion.

5. COLLATERAL ATTACK.—When the judgment or decree of a court of general jurisdiction is attacked collaterally, it must be deemed valid, unless it appears that no facts could have been shown which could render it so.

6. STATUTE CONSTRUED.—The act of March 20, 1848, did not fix any period after which administration should not be opened, and the courts can not legislate by fixing an arbitrary period. Ricard v. Williams, 7 Wheaton, 115, and McFarland v. Stone, 17 Vermont, 178, cited, and reviewed in this connection.

Syllabus.

7. JURISDICTION—COLLATERAL ATTACK.—A decedent died in 1852. Over fourteen years afterwards letters of administration were granted on his estate, under which lands were sold. The letters were granted on a petition, which stated that his principal estate was in the county where the application for letters was made, and that he died in another county. Over ten (10) years afterwards the heirs brought suit to set aside the sale for the alleged want of jurisdiction in the probate court to order it; for fraud and collusion between the administrator and the purchaser, who presented the claims under which the land was sold; because the deceased had his residence, when he died, in a county other than the one in which the estate was administered, and that his principal estate was in the county of his residence; because the administration was taken out for the fraudulent purpose of acquiring title to the land, and that all claims against the estate were barred before the letters of administration were granted. The suit being an original proceeding in the district court by the heirs to declare the administration a nullity for want of jurisdiction; to set aside the sales and deeds for fraud; to recover the land, and to remove cloud from title, *held:*

(1) The grant of letters can not be held void in such a proceeding by the district court, and it cannot inquire whether, on the ground claimed, the action of the probate court in granting letters was erroneous.

(2) A different doctrine would destroy the safeguards for purchasers at sales ordered by courts invested with power to decide when sales shall be made, and when they have been legally made; and would lead to the sacrifice of estates by destroying confidence in such sales.

(3) Though claims against an estate were presented to and approved by the court, which were at the time manifestly barred by the statute of limitations, that approval stands as a judgment which can not be collaterally attacked.

(4) But if the claims were fraudulent and the land was sold to satisfy them by order of the probate court, and the pretended creditor who presented the claims became the purchaser, a court of equity would have power in an independent proceeding to act directly on the purchaser, while the apparent title still remained in him, to prevent his reaping benefit from his fraud, and wrest from him the title thus fraudulently obtained. On this point Poor v. Boyce, 12 Texas, 449; Dancy v. Stricklinge, 15 Texas, 564, and George v. Watson, 19 Texas, 369, approved.

(5) No relief can be afforded, even by a court of equity, against one who has purchased the land from such fraudulent purchaser, for value, and without notice of his fraud.

(6) If the period which would bar debts is to be deemed the period after which administration can not be legally granted (when not regulated by statute), then the courts ought not, in a collateral proceeding, to declare an administration void, if granted within ten years, which, in Texas, is the longest period of limitation.

(7) Whenever, in a collateral attack upon an administration, it has been judicially held that an administration was a nullity, unless some fact was shown when letters were granted, the word *nullity* is to be construed as equivalent to the word voidable, for if there were a

fact or facts, proof of which would have made the administration valid, it can not be void, and the legal presumption is that the very fact which would give validity was pressed before the court which granted the administration.

APPEAL from Houston.     Tried below before the Hon. J. P. Stevenson, Special Judge.

The opinion states all facts necessary to its proper understanding.

*J. R. Burnett,* for appellants:     On his proposition that the district court had no jurisdiction of the alleged cause of action, which is an original proceeding in said court to revise and review the orders and proceedings of the county court of Houston county, and the judgment should be reversed and the cause dismissed, cited Constitution of 1876, article 5, section 8; Heath v. Layne, 62 Texas, 686; Franks v. Chapman, 60 Texas, 47; Chambers v. Fisk, 15 Texas, 341.

That no lapse of time except the longest period known to the statute of limitations could render the administration void, he cited Ford v. Cowan, 5 Texas Law Review, 321; Giddings v. Steele, 28 Texas, 733; Hudson v. Jurnigan, 39 Texas, 585; Grande v. Herrera, 15 Texas, 534; Burdett v. Silsbee, 15 Texas, 604; Ricard v. Williams, 7 Wheaton, 115; Whit v. Ray, 4 Iredell, 14; McFarland v. Stone, 17 Vt., 165.

*H. G. Roberson,* for appellee, contended that lapse of time before the grant of letters rendered them void, citing Duncan v. Veal, 49 Texas; Merriweather v. Kennard, 41 Texas, 273; Wardrup v. Jones, 23 Texas, 495; Cochrane v. Thompson, 18 Texas, 656; Francis v. Hall, 13 Texas, 189; Fisk v. Norvel, 9 Texas, 13; Blair v. Cisneros, 10 Texas, 35; Boyle v. Forbes, 9 Texas, 39; Williams v. Conger, 49 Texas, 582; Murphy v. Welder, 58 Texas, 241.

STAYTON ASSOCIATE JUSTICE.     On May 11, 1867, the following application for letters of administration was filed in the probate court for Houston county:

"THE STATE OF TEXAS,  }
      "HOUSTON COUNTY.  }
" *To Hon. J. M. Odell, Chief Justice of said County:*
"John S. Martin, who resides in said county, would respectfully represent to your honor that James Carter, formerly of said

State, departed this life at Corpus Christi some time in the year 1852 without leaving any will so far as known to petitioner. And further, petitioner shows that there has never been any administration on the estate of said Carter, deceased, and that the principal part of the estate of said Carter is situated in said county, to wit, one thousand four hundred and seventy-six acres of land, the headright of said Carter; and further, petitioner shows that his wife, Eliza L. Martin, is the niece of said Carter, deceased, and is the next of kin and the oldest heir at law of said Carter, deceased. The premises considered petitioner prays that the usual notice be given to the next term of the county court pertaining to estates in and for said county of Houston and for an order appointing petitioner administrator of the estate of said Carter, deceased, and for such other orders as may be necessary and proper, petitioner will ever pray," etc.

On May 27, 1867, the applicant was appointed administrator, the amount of his bond fixed and appraisers appointed. On the next day Martin executed the bond required and qualified, and on the day after this an inventory and appraisement, showing only the land named in the application, was filed and these were received and directed to be recorded.

On September 24, 1867, an additional inventory was filed showing that the estate owned one-third of a league of land in Kaufman county, another tract of like size in Angelina county, and five leagues of land in Nueces county, the title to which was stated to be doubtful. These lands were appraised by persons appointed by the court, and on October 30, 1867, the additional inventory and appraisement were approved and directed to be recorded, the land in Nueces county being appraised at five dollars.

The following claims after having been duly authenticated were allowed by the administrator and approved by the county judge on February 6, 1868.

Claims proved by Mrs. Todd are as follows: Copies of two notes executed by James Carter, one for two thousand dollars, due January 1, 1853, the other for one thousand dollars, due January 1, 1854, both dated Rusk, Texas, December 8, 1852, and payable to Jackson Todd or bearer, with ten per cent interest from date. These claims were duly authenticated by Mrs. Todd, the affidavits also stating that the originals had been stolen from Jackson Todd on February 22, 1856. Also, an original account of W. G. Johnson for fifty-nine dollars and forty-seven cents for goods sold to Carter in 1852 at Corpus Christi, which account ap-

peared by the creditor's receipt to have been paid by Jackson Todd June 2, 1853; also, an original account of Dr. P. N. Luckett for one hundred and twenty dollars, for medicines, etc., the last item being "April 20, 1852, for visit, prescription and medicine," and which is endorsed paid by Todd, May 17, 1853. Also original note of James Carter, dated Clinton, Louisiana, March 22, 1847, for one hundred and ninety-five dollars, payable thirty days after date, to Lucy Morgan or bearer, with eight per cent interest from date, endorsed "Sold this note to J. Todd, no recourse back on me, this tenth of January, 1848. (Signed) Lucy Morgan." Also endorsed, "Received on this note twenty dollars this tenth of February, 1852. (Signed) J. Todd."

Mrs. Todd was the widow of Jackson Todd, who died in the year 1856, and there is some evidence that she claimed that the two notes first named were given by Carter for negroes given to her by her father. The claims presented by Mrs. Todd were first sworn to by her before a justice of the peace on October 25, 1867, and they were allowed by the administrator a few days afterwards, after which they were again sworn to before a county judge, and on February 6, 1868, they were re-allowed by the administrator, and approved by the county judge.

On July 30, 1867, the administrator filed an application to sell the land in Houston county to pay expenses of administration, and a sale was made and reported, but on October 31, 1867, the sale was disapproved, and a resale ordered. On October 29, 1867, the administrator filed an application under oath to sell the lands in Kaufman and Angelina counties, representing in his application that claims against the estate amounting to over three thousand two hundred and fifty dollars had been presented to him, and that a sale was necessary to pay debts, and on the next day the court granted the application to sell. The three tracts were sold on the first Tuesday in January, 1868, and Mrs. Todd became the purchaser of all the tracts at six hundred dollars each. The return of sales, sworn to, was filed on February 6, 1868, and on the twenty-fourth of the same month the court approved them and ordered deed made to the purchaser.

The administrator, on April 10, 1868, made a deed to Mrs. Todd, fully reciting the applications to sell, the orders of sale and order of court confirming the sale, and reciting the payment of the purchase money. This deed was duly acknowledged and recorded in Houston county, October 29, 1869; Angelina county, November 8, 1869, and Kaufman county, November 29, 1869.

The administrator filed his final account in the district court on February 7, 1872, and notice thereof was soon after given; but it does not appear that any action was taken thereon, and, in the original petition filed in this case, it was alleged that the administration had not been closed.

The appellants claim through conveyances made by Mrs. Todd.

This action was brought by some of the heirs of James Carter, on July 22, 1878, and the relief which they seek is thus stated in the prayers to their petition:

"1.  That the pretended administration aforesaid, and the orders made therein affecting the title of plaintiffs to said land, and the sales of said lands therein, and the deeds made by the administrator, be set aside and held for naught because of the want of jurisdiction of the county court of Houston county to grant such administration, and to make such orders, and to pass the title to said lands.

"2.  That in case relief be not granted on the grounds above prayed for, that the order of sale and sales and deeds made by said Martin be set aside, because of the fraud by which they were procured and executed.

"3.  That, in case relief on either of the above grounds be denied, the claims asserted by the several defendants under such administration be removed as clouds on plaintiff's title, and that the title to said lands be decreed to be in the heirs of said James Carter, and that plaintiffs be placed, by the decree and process of the court, in the possession and enjoyment of said lands. They also pray for costs and general relief in the premises."

As ground for the relief sought, the petition alleges that James Carter had his domicile in Nueces county at the time of his death, and that his principal estate was there situated; that the averment of nearest relationship of Martin's wife to Carter was untrue; that Carter owed no debts, and that there was no necessity for administration; that administration was taken out for the fraudulent purpose of acquiring title to the land; that the claims presented against the estate were fictitious, but if once valid were barred by the statutes of limitation before administration was granted; that Martin and Mrs. Todd fraudulently procured the orders of sale and confirmation, and that of all these things the plaintiff had no knowledge until the year 1877.

The petition was very full and specific upon all these matters.

The most, if not all, of the defendants claiming the land in

Kaufman and Van Zandt and in Angelina counties were alleged to be residents of counties other than Houston.

The main purpose of the plaintiffs was to establish their title, and to obtain possession of three tracts of land situated in different counties. Their right is based on inheritance from James Carter, and the denial that the title thus vesting had been divested, through sales made by Martin as administrator of the estate of Carter, in pursuance of orders of the probate court for Houston county. If the administration in that county was void, the sales made under it interposed no obstacle to a recovery; but if such was not its character, it became necessary for the plaintiffs to have the sales, in effect, set aside by some appropriate proceeding before they could recover the land.

If the administration was void, there can be no doubt of the power of the district court so to declare it, and to give the relief sought in so far as it had jurisdiction over the several defendants; but if the administration was not void, and the orders of sale, sales, confirmation of sales and deed made by the administrator were only voidable, then the question arises whether the district court had jurisdiction to grant the relief asked in the second prayer.

These questions will be examined. Was it shown that the administration and proceedings under it were void? That the county court for Houston county was a court of record of general jurisdiction over all matters relating to the administration of the estates of deceased persons is not an open question. (Guilford v. Love, 49 Texas, 716; Giddings v. Steele, 28 Texas, 750; Lynch v. Baxter, 4 Texas, 431; Murchison v. White, 54 Texas, 83.)

When a court of record, having such jurisdiction, has assumed to exercise it in a given case, all presumptions are in favor of the validity of its proceedings; and if the record of such a court shows that the steps necessary to clothe it with power to act in the given case were taken, or if the record be silent upon this subject, then its judgment order or decree must be held conclusive in any other court of the same sovereignty when collaterally called in question. (Burdett v. Silsbee, 15 Texas, 618; Alexander v. Maverick, 18 Texas, 197; Withers v. Patterson, 27 Texas, 492; Lawler v. White, 27 Texas, 254; Murchison v. White, 54 Texas, 78; Guilford v. Love, 49 Texas, 715.)

The probate court for Houston county, in granting administration on the estate of James Carter, in effect declared that he was dead; that he left an estate subject to administration within its

jurisdiction; that there was a necessity for an administration, and that the facts existed which gave to that particular court the power to grant and control that administration.   That James Carter died prior to the grant of administration was alleged in the application and is admitted to be true.   That he left an estate which, if necessary, some probate court in this State had power to cause to be administered, the application alleges; and this is also admitted to be true and made the basis of the plaintiff's claim.   The decease of the person on whose estate administration is sought is a fact essential to the jurisdiction of a probate court to grant letters testamentary or of administration; for it is only over the estates of deceased persons that to such court jurisdiction is given by law.   If the person on whose estate administration is sought be alive, power to inquire whether this be so or not does not exist; hence no declaration of the court to the contrary can be given any effect. .

If there be no estate there is nothing on which the jurisdiction of such a court can operate, for the very purpose for which the power is conferred assumes the existence of a thing upon which it can operate.

When a person dies, *leaving* within its jurisdiction an estate, then, and not before, has a probate court the power to inquire and determine the existence or non-existence of every fact necessary to be determined in ascertaining whether it has jurisdiction in the particular case, and the extent to which it ought to be exercised.

Such a court must determine whether the facts exist which make it lawful for administration to be granted in the county in which the court sits, and, if in this respect, having power to make the inquiry, it comes to an erroneous conclusion, its decree founded on such conclusions is voidable but not void.   (Lynch v. Baxter, 4 Texas, 431;  Burdett v. Silsbee, 15 Texas, 604;  Giddings v. Steele, 28 Texas, 750.)  The main ground on which it is insisted that the probate court had not jurisdiction, involves the proposition that there was no estate subject to administration.

This proposition is not based on a denial that James Carter left an estate which might have been administered within proper time, but upon the proposition "that the liability to administration with which the law at Carter's death encumbered the property which had belonged to him, had ceased to exist, by lapse of

time, and the property had become absolutely vested in the heirs."

The Act of March 20, 1848, was in force when administration was granted to Martin; and it did not in terms prescribe a time within which administration must be taken out.

Cases arising under the Spanish law formerly in force, under the Act of January 22, 1836, in effect adopting the laws of the State of Louisiana in relation to successions; and under the Act of February 5, 1840, can have but little, if any, bearing upon the question; but those cited by counsel supposed to bear upon it will be noticed.

In Blair v. Cisneros, 10 Texas, 35, it appeared that the intestate died in 1833, when the Spanish law was in force, which permitted heirs to accept an estate without administration; that this was done; that there were no debts, and upon this state of facts it was held that administration taken out in 1849 was void.

In Fisk v. Norvel, 9 Texas, 15, it appeared that the intestate died in 1839; that administration was granted on his estate in the same year, and that this was continued until the year 1848, when the final account of the administrator was approved and the estate closed.

After this, administration was granted on the estate, and it was held that the estate having been administered, the last grant was void. After referring to the statutes applicable to the subject, the court said: "These provisions show that when a succession has once been administered and closed the effects are by operation of law, restored to the heirs. In this case the power of the probate court over the estate had ceased. No such case could have been presented as would have authorized the grant; the estate had vested, or been restored to the heirs in full ownership; they were as much proprietors as was the intestate in his life time; their rights were exclusive, and incompatible with any power in the probate court to transfer their property to another, and any attempt to do so was beyond the jurisdiction of the court and a mere nullity." Withers v. Patterson, 27 Texas, 494, involved substantially the same facts as Fisk v. Norvel.

In Boyle v. Forbes, 9 Texas, 36, it appeared that administration was granted in 1838, and it not being shown that it had been continued by order of court, the power of the administrator to bring an action in his representative capacity was denied. In the opinion it was said that "independently of the statute fixing the precise period of one year to the administration, it

would seem that after the lapse of thirteen years the presumption would be that all legal demands against the succession had been discharged."

In Frances v. Hall, 13 Texas, 189, it appeared that the testator died in 1837; that there was controversy about the probate of his will; that the heirs compromised it, and accepted and divided the estate, and it was held that an administration granted more than ten years afterwards was void.

In Wardrup v. Jones, 23 Texas, 489, the facts were that the intestate died in 1837, and that in the county of his domicile letters of administration were taken out the year following. In 1852 administration was granted on his estate by the probate court of another county, and it was held that it would be presumed that the estate was administered under the administration properly taken out, and that the later was granted without authority of law. It was shown that there were no debts due from or to the estate when the last administration was granted.

In Cochran v. Thompson, 18 Texas, 652, it appeared that the intestate died in 1837; that administration was taken out on his estate the following year, and that in 1851 the plaintiff, who sued to recover land claimed to have been fraudulently disposed of by a former administrator, was appointed administrator de bonis non. On appeal the validity of the last grant of administration was questioned, but while there is some discussion in the opinion of the question of the invalidity of such a grant after so great a lapse of time, it is evident that the court held that the question was not so brought before it as to authorize its decision.

The court said: "As a general rule, grants of administration after so great a lapse of time should be regarded as nullities; but there may be special reasons which would even then support a grant, as for instance to recover a money demand or claim of the estate which had lately fallen due."

In Merriwether v. Kennard, 41 Texas, 273, the facts were that the intestate died in 1841, and no administration was granted on his estate until 1850, but, as said by the court, "There was then, according to appellee's showing, in 1850, no estate of William O. Merriwether, deceased, to be administered upon, and none to give the probate court jurisdiction." The case was disposed of, however, on another point on rehearing.

Duncan v. Veal, 49 Texas, 604, was a case in which it appeared that the intestate was a volunteer soldier, killed in the year 1836 at Goliad, on whose estate administration was granted in 1838;

but the administrator never qualified, and there was an order made in 1839 appointing another, which however was rescinded, and so remained the estate until November, 1850, when an administrator was appointed.

In disposing of the case, it was said that, in the absence of averment and proof of some special necessity for the grant of administration, it ought to be presumed that there were no debts due by or to the estate, or necessity for administration after the lapse of so great a length of time. It was also said that, if an administration was necessary, it should have been in Goliad, and not in Harris county.

It is evident, however, from the opinion, that the sale under examination in that case was held invalid because "the sale of the certificate under which the land in controversy in that case was held was in plain violation of the Act of January 14, 1841, entitled 'An Act to protect the rights of heirs and next of kin to the members of the Georgia battalion, and other volunteers from foreign countries, who have fallen in the battles of the Republic, or otherwise died in the limits of the same.'" (Pas. Dig., art. 1398; Harris v. Graves, 26 Texas, 579.)

That law required the record to show the facts which it made necessary to the validity of such sales, and in the absence of such showing no presumption could be indulged that such facts existed.

These are the cases to which we have been referred to sustain the proposition that the administration on James Carter's estate was void. Some of these were cases where, under the former law, the heirs, as they might do, had accepted the estate, and the property thereby became their own and not subject to administration; others were cases in which there had been administration, and the estate thereby freed from the further control of the probate court; others were cases in which administrators sought to exercise powers after the period to which the law restricted them had expired, without showing that the court which appointed them had continued the administration; another was a case in which there was no estate to administer, and the last was a sale made in open violation of law, which forbade it unless the authority was shown by the record.

None of these cases assert the broad proposition that an administration will be deemed void on the sole ground that over fourteen years elapsed after the death of the intestate before administration was granted; nor that it will be deemed void if

granted after such period as would bar ordinary debts. If the period which would bar debts is to be deemed the period after which administration can not be legally granted, when not regu-lated by statute, then the courts certainly, in a collateral pro-ceeding, ought not to declare an administration void if granted within ten years, which is the longest period of limitation.

In the case before us, excluding the time during which the running of the statutes was suspended, this period did not elapse.

In some of the cases to which we have referred, it is stated that the administrations were nullities unless it was avered and proved on the trial that the facts existed which made adminis-tration necessary.

When in a collateral attack it is said that an administration was a nullity, unless some fact be then shown, the word null or void is used in the sense of voidable; for if there be then a fact or facts, proof of which would make the administration valid, it can not be void, and the legal presumption is, that the very fact which would give validity was pressed before the court which granted administration. The rule suggested in this respect, in some of the cases, would be the rule in a proceeding appellate in character, if the cause be tried de novo; but it seems to us that no such rule can exist when the validity of an administration granted by a decree of a court of record having general juris-diction is sought to be attacked or held for naught in a collateral proceeding, for if it would be possible to prove facts sufficient to sustain the administration it must be presumed, on such attack, that these very facts were proved before administration was granted. We understand the rule to be, when the judgment or decree of such a court is collaterally called in question, that it must be deemed valid unless it appears that no facts could have been shown which would render it so.

We know of no case in which it has been held, under the Act of March 20, 1848, that a grant of administration was void be-cause made after the lapse of as many years as transpired be-tween the death of James Carter and the grant of administration on his estate. The legislature had not deemed it necessary, at the time his administration was granted, to fix a period after which administration should not be opened, and it would. seem that, in such case, courts ought not to assume to exercise a power which clearly belongs to another department of the government and fix an arbitrary period for administration.

That, in the absence of a limitation fixed by law, a probate court

ought closely to scrutinize an application made after the lapse of many years is true; and in such case it ought to be well satisfied that there is a necessity for administration before it grants one, but after it has acted and determined that a necessity existed, it certainly ought not to be held by any other court, not exercising an appellate jurisdiction, that its judgment or decree was void or even erroneous.

The most that has been said in England in reference to grants of administration, after the lapse of many years, is that applications so made raise suspicion which justifies the court to which they are made in calling for explanations. (In re. Elizabeth Darling, 3 Hagg., 561.)

In Ricard v. Williams, 7 Wheaton, 115, it was said: "It does not appear that, at the time of granting administration on this estate, any statuteable limitation of the period within which an original administration might be granted existed in Connecticut, though a limitation generally to seven years after the death of the party has been since introduced; and the present administration, though granted after the lapse of twenty-eight years from the death of William Dudley, must be considered as valid, it having been allowed by a court of competent and exclusive jurisdiction, whose decisions we are not at liberty to review."

In McFarland v. Stone, 17 Vermont, 173, it appeared that administration was granted twenty-five years after the death of the intestate, and, as here, it was claimed to be void, but the court held this not to be true, and the decree of the probate court conclusive of the validity of the administration in a collateral proceeding. The cases of Whit v. Ray, 4 Iredell, 14; Townsend v. Townsend, 4 Cold., 80, and Foster v. Commonwealth, 35 Pennsylvania State, 149, bear upon the question.

The grant of administration to Martin can not be held void, and in this proceeding the district court had no power to inquire whether, on the ground claimed, the action of the probate court in granting it was erronous. Any other holding would destroy the safeguards which the law designs to give to purchasers at sales conducted under decrees of tribunals empowered to determine when sales shall be made, and when they have been legally made, would lead to the sacrifice of estates by destroying confidence in such sales, and to incalculable evils.

The petition was sufficient to invoke the jurisdiction of the court. (Kleinecke v. Woodward, 42 Texas, 311; Alexander v.

Maverick, 18 Texas, 194.)   Claims were presented against the estate, which upon their faces were barred, but they were approved by the probate court and stand as judgments.   (Moore v. Hillebrant, 14 Texas, 312; Heffner v. Brander, 23 Texas, 631; Firebaugh v. Ward, 51 Texas, 409.)   These claims may have been unreal, may have been fraudulent, but this would not open, in this proceeding, the decrees directing the sales of property to pay them, nor the decree confirming the sales.   This brings us to the inquiry whether the plaintiffs are shown to be entitled to the relief which they seek in their second prayer.

It appears that the lands purchased at the probate sales have been sold by the purchasers, and that through conveyances made by her title to the land has passed to many purchasers, some of whom, at least, are innocent purchasers.

The purchaser at the probate sales was the person who presented the claims which the lands were sold to satisfy, and if these claims were fraudulent and the title to the land which she purchased still remained in her, there is no doubt that a court of equity would have the power to prevent her reaping any benefit whatever under her purchases.

While it is not strictly true that a court of equity can never vacate a judgment rendered by a court of law, for the reason that it has no revisory power over such courts, and therefore can not act upon them or their judgments, yet, it is true that courts of equity, by acting upon the party who has obtained through fraud something to which he is not entitled, has the power, in many methods, to prevent such a person from reaping any advantage even from a judgment obtained by fraud.

The remedy which equity gives, as has been well said, reaches all those who were actually concerned in the fraud; all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice.

A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenhome's language, from his children and his children's children, or, as elsewhere said, from any persons amongst whom he may have parceled out the fruits of his fraud.   There is one limitation. If the property which was acquired by fraud, has come by transfer into the hands of a bona fide purchaser for a valuable consideration and without notice, even though his immediate grantor or assignor was the fraudulent party himself, the hands of the court are stayed, and the remedy of the defrauded party,

with respect to the property itself, is gone. His only relief must be personal against those who committed the fraud. (Pomeroy's Equity, 918; Story's Equity, sec. 1571; Freeman on Judgments, 489, 509; Poor v. Boyce, 12 Texas, 449; Dancey v. Stricklinge, 15 Texas, 564; George v. Watson, 19 Texas, 369.)

The qualifications to this general rule, if any, need not be considered under the facts of this case. The plaintiffs are not entitled to any relief against any one of the defendants who may be a purchaser for valuable consideration, without notice of the fraud charged against the administrator, and the purchaser at the sales made by him, shall it be shown that the matters charged by the plaintiffs are true.

The decrees of the probate court not being void, bona fide purchasers are entitled to rely upon them and to esteem them as of absolute verity. In view of the disposition that will have to be made of the case, it is not necessary to consider the claims of the several defendants. The purpose of this action is to recover three distinct tracts of land situated in different counties.

The residences of the several defendants are stated in the petition. Those who claim the land in Kaufman county, or some of them, disclaimed as to all other lands, and denied the jurisdiction of the court as to them. Whether the demurrers of all of them were filed before pleas to the merits we can not ascertain, except as to the defendants Huffman and Thomaston, who are shown to have called in question the jurisdiction of the court as to themselves at the proper time. The court overruled their pleas and we are of the opinion that this was error. If the other defendants who claimed, or were asserted to claim, only the land situated in that county, questioned the jurisdiction of the court in proper time, the action should have been dismissed as to them. What has since been said as to the defendant's claiming the land in Kaufman county, is applicable to the defendants who claimed only the land in Angelina county. At the time this action was brought, as now, those claiming land in one county could not, without their consent, be sued in a county other than that in which the land was situated. (Pas. Dig., art. 1423; Rev. Stat., art. 1198.)

This is not a suit for partition. The fact that the plaintiffs rely upon the same facts for the recovery of three distinct tracts of land, can not entitle them to maintain this action for land situated in three counties, and in no way connected in the county in which one of the tracts is situated, unless such defendants as

only claim land in other counties have waived their rights to be sued only in the county in which the land they claim is situated.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 11, 1887.