J. H. HERNDON ET AL. v. HEIRS OF J. M. KUYKENDALL.

(Case No. 696.)

1. JUDGMENT — FRAUD — ADMINISTRATOR'S SALE.— The rule that jurisdiction being once established, every presumption will be indulged in favor of what does not appear in the proceedings of the court, has its application generally to cases where the judgment is attacked in a collateral proceeding. It cannot be invoked to vali-

date a probate sale attacked for fraud-charged against an administrator and the pur-
chaser, both of whom are made parties in a direct proceeding by *certiorari*, when
the record, unexplained, contains intrinsic evidence of the fraud, and the parties
to the alleged fraud, being before the court, offer no explanation.

2. SAME — FACT CASE.— See the statement of this case for circumstances, apparent
of record in probate proceedings, held sufficient on their face, when unexplained,
in a proceeding by *certiorari* where all the parties were before the court, to author-
ize a judgment declaring fraudulent an administrator's sale.

APPEAL from Harris. Tried below before the Hon. James Masterson.

This case rivals that of Jarndyce *v.* Jarndyce, at least in its duration. Its purpose was to cancel a fraudulent sale made in 1850, under proceedings in probate begun in 1848, which were removed by *certiorari* to the district court in October, 1857; there the case lingered until August, 1873, when, on no other evidence than such as an inspection of the probate record afforded, a judgment was rendered declaring, fraudulent, the sale of a league of land. That judgment was brought up by writ of error to the supreme court in 1875. The original parties died during the litigation, and the judgment now rendered is for the benefit of the descendants of the heir who charged fraud in the conversion of his ancestor's estate.

An application was made to the judge of the district court in Harris county for a writ of *certiorari* to the county court of that county to bring up the record of the proceedings had in that court in the succession of A. L. Kuykendall, deceased. The petition was filed October 28, 1857, by John M. Kuykendall, the ancestor of appellees. He alleged that he was the only surviving child of Abraham L. and Ann Eliza Kuykendall, who had formerly resided in Harris county; that his mother died in 1840 or 1841, and his father in 1845, in that county; that neither of them owed any debts; that his father owned at the time of his death a league of land in Bexar county, which was his headright and was community property, a lot in the town of Richmond, Fort Bend county, and a judgment against one D. S. Woods for $180; that his father's league certificate had been located and surveyed and the field notes deposited in the land office before his death, but the patent had not issued. That some time after the death of his father, John H. Herndon (one of the defendants), for the purpose of defrauding petitioner (who was then a small boy) of his property, took the patent out of the land office and had kept it ever since.

It was charged that Herndon, for the purpose of carrying into effect his fraudulent intent, induced James R. Shipman (another defendant), in November, 1848, to apply to the county court of Harris

county for letters of administration upon the estate of A. L. Kuy-
kendall, upon the false pretense that Kuykendall had died indebted
and that he, Shipman, was a creditor.    That Shipman was, by that
court, appointed administrator at the November term, 1848, and on
the 31st of January, 1849, filed an inventory of the property of the
estate, and had the league of land appraised at $428, when it was
worth $6,000; that at the February term, 1849, Shipman, without
any claims against the estate having been presented to him for al-
lowance, applied for and obtained an order for the sale of all the
property of the estate; that nothing was done under that order, nor
was anything else done in the administration until the January
term, 1850, when John H. Herndon appeared before the court as
the attorney of Shipman and consented to his removal from the
administration; that Shipman never afterwards presented any
claim against the estate; that at the August term, 1850, Herndon,
for the purpose of effecting his fraudulent designs, induced Augustus
C. Davis (another defendant) to apply for letters of administration;
that Davis was appointed at the August term, filed a copy of the
original inventory, and at the September term, one month afterwards,
applied for an order for the sale of the property of the estate to
pay alleged debts, though no claims had been presented to him and
none existed against the estate; that the order of sale was granted
at the same term, and under that order, that Davis, as administrator,
sold the entire property of the estate to Herndon for the sum of
$458; that Herndon had never paid any part of the purchase money,
and that the administration was still open and pending in the county
court.

Prayer for writ of *certiorari* to bring up the whole proceedings
of the county court; for citation to the defendants above named;
that the sale be set aside, and for general relief.

The transcript from the county court covers twenty-nine and one-
half pages of the record.    It shows, among other things, that at
the November term, 1850, Davis, the administrator, reported the
sale to Herndon as having been made on the 5th of that month,
and that, at the same term, the sale was confirmed by the court.
From that time on, the transcript consists chiefly of continu-
ances, and ineffectual efforts, such as orders, citations and attach-
ments, to compel the administrator to make his final exhibit and
close the administration.    In 1857, in response to a citation, he ap-
peared and said that he had done nothing in the administration
since the sale; that he had sold the property to Herndon on a credit
of twelve months; that Herndon had given his note for the pur-

chase money; that the note was overdue, and he had written to Herndon to "come down" and pay it, "which he had promised to do, but had failed, and asks for further time."

At the June term, 1858, in response to another citation, he reported that nothing further could be done with the estate, as proceedings had been begun in the district court against himself, Shipman and Herndon.

December 1, 1858, defendant Davis appeared by attorney in the district court and answered by a general demurrer, special exception that he was not a necessary or proper party, and a denial of all the allegations of fraud so far as he was concerned.

On the same day defendant Herndon answered by a general demurrer and special exceptions, as follows:

1st. That his codefendants, Davis and Shipman, were not proper parties.

2d. That the allegations of fraud were vague and indefinite.

3d. That it appeared from the petition that the county court of Harris county had jurisdiction to order the said sale, and that the jurisdiction was exercised according to law.

And further, that he had purchased the property from the administrator in good faith and for a fair price. He denied all allegations of fraud and all allegations not admitted, and pleaded "not guilty."

In 1860 defendant Shipman waived service of citation, but filed no answer.

In November, 1860, defendant Herndon amended, and by way of special demurrer set up that from the petition it appeared that the league of land was the community property of plaintiff's father and mother; that as to the mother's interest this was an action of trespass to try title and should have been brought in Medina county, where the land lay.

He answered further, that plaintiff had no interest in the league of land; that plaintiff had sold the league in December, 1856, to one J. B. Kuykendall for $1,000, and he annexed a copy of the deed from plaintiff to Kuykendall as an exhibit; that plaintiff had so sold the league of land to J. B. Kuykendall before the filing of the original petition; that the pretended deed from J. B. Kuykendall (for the land) to plaintiff was colorable and without consideration, and was made to enable plaintiff to institute this suit; that under that reconveyance plaintiff really held the land as a purchaser from J. B. Kuykendall and not as the heir of A. L. and Ann Eliza Kuykendall, and hence had no right to the proceeding by

*certiorari;* and further, that J. B. Kuykendall was then more than forty years old, and, if he could have brought the suit in any case, would be barred by the limitation of two years.

December 3, 1860, plaintiff amended, admitting the sale by him to J. B. Kuykendall, but alleged a reconveyance by J. B. to him before the filing of the original petition.

The plaintiff died in 1870, and in 1872 his minor children, Eliza, Cynthia Ann, Leona, John and James W. Kuykendall, by their mother and next friend, Sarah Kuykendall, were made parties plaintiffs.

April 27, 1872, plaintiffs moved to strike out the various exceptions, demurrers, etc., of defendant Herndon, for several reasons, as that they were not filed in the due order of pleading, were not acted on at the time when filed, and were not sworn to.

December 13, 1872, plaintiffs again amended, renewing the charge of fraud and collusion; that Herndon had used the two administrators for his own purposes; that Shipman had falsely represented that there were debts against the estate, when there were none; that the inventory filed by Shipman did not show what was common and what was separate property; that there was no list of claims against the estate; that there was no allowance set apart for any child or children of deceased; that Shipman, by the advice of Herndon, his attorney, made no publication of notice; that no claims against the estate were presented and none existed, as both of them well knew, and there was no necessity for administration; that Shipman was dismissed by the consent of his attorney, Herndon, without notice, and without having made any exhibit of the condition of the estate; that Davis was illegally appointed administrator; that the petition of Davis for the sale gave no sufficient reason for the sale, it merely stating that there were debts against the estate unpaid, and that he had no means wherewith to discharge the same, except from the sale of the property; that he made no proof of the existence of said debts, and the previous order to Shipman was still in force; that Davis' report of the sale did not show that it was a public sale; that Herndon never complied, and never intended to comply, with the terms of the sale; and Davis did not readvertise, and in fact never did anything in the matter afterwards; that Herndon was the fraudulent contriver and manager of the whole plan, and the other two were his willing instruments; and that there was no necessity for continuing the administration longer, except for the purposes of this suit, as the estate owed no debts.

On the same day, defendant Herndon, amending his former de-

murrer, alleged that plaintiff, as a purchaser of the league of land, had no right to the writ of *certiorari.* He also suggested a diminution of the record, and prayed for an order to the clerk of the county court to send up the following account against the estate of A. L. Kuykendall, as having been annexed to the petition of Shipman for letters of administration, but which was omitted by the clerk, as follows:

LIST OF CLAIMS AGAINST ESTATE OF A. L. KUYKENDALL.

Account of estate of John M. Shipman, deceased, in Fort Bend county, on
 stray bond............................................ ............ .... $18) 00
Amount necessary to redeem land sold for taxes....:...................... 114 92
Probable expenses of administration . ......................... ........ 50 00

December 12, 1872, death of Davis suggested. December 13th, plaintiffs except to suggestion of diminution of record because it was not sworn to, and was unnecessary.

In 1869 the bankruptcy of Herndon had been suggested, and in 1870 the assignee, Masterson, waived service, but took no part in the litigation.

In 1873 P. Tiernan intervened, claiming eight hundred acres of the land, and referred to his deed as a part of his petition; but there is no such deed in the record, nor any evidence of his interest in the land. April 4, 1873, F. M. Toland, administrator of A. L. Kuykendall, appeared and made himself a party.

In August, 1873, the cause was submitted to the court without a jury. The court rendered judgment setting aside the sale, and vesting title to the property in plaintiffs, and that the intervenor take nothing. Some days afterwards the court, upon motion of plaintiffs, amended the judgment so as to omit that part which vested title in plaintiffs.

The defendant Herndon and the intervenor Tiernan brought up the cause by writs of error, the bond having been approved August 3, 1875.

The decree of the court below canceled the deed from Davis, administrator, to Herndon, but there is no such deed in the record, nor any evidence of its existence, except the above, nor is there any evidence that Herndon ever paid the purchase money. The inspection of the probate proceeding verifies all the allegations of facts stated, as contradistinguished from the conclusions of fraud charged.

The assignments of error were:

1st and 2d. That the judgment was contrary to the law and the evidence.

. . . 4th. The court erred in setting aside the orders of sale

and confirmation after jurisdiction had attached to the subject matter, the petition showing indebtedness.

5th. The court erred in rendering judgment for plaintiffs, when it appears of record that John M. Kuykendall had no such interest as entitled him to the writ of *certiorari.*

*Goldthwaite & Duncan*, for appellants.

I. The judgments of courts will not be set aside on mere surmises or suspicions, but there must be evidence to establish the fraud that does naturally and reasonably tend to that conclusion. 1 Story's Eq., § 190; 1 Howe on Fraud, 24; Alexander *v.* Maverick, 18 Tex., 194; Grassmeyer *v.* Beeson, 18 Tex., 765; Kellum *v.* Smith, 18 Tex., 847.

II. And it must not be legal and technical fraud, but actual and positive fraud — fraud in fact. Insurance Co. *v.* Coulter, 3 Pet., 341.

III. Fraud is not to be presumed, but must be proved. Giddings *v.* Steele, 28 Tex., 758. The jurisdiction being established, all presumptions must be made in favor of what does not appear. Tucker *v.* Harris, 13 Ga., 1; Duval *v.* McLosky, 1 Ala., 708; Thompson *v.* Talmie, 2 Pet., 165; Alexander *v.* Maverick, 18 Tex., 194; Pasch. Dig., vol. 3, § 20,475. Nothing but the record of the probate court being submitted, no evidence over or beyond that, and the question being whether the mere absence from the record of the statement of indebtedness which authorizes a sale of estate property, or whether the presence in the record of a rude, informal statement of indebtedness or list of claims, indorsed on the back of the petition for sale of property, is sufficient cause to annul the order of sale and the order of confirmation of sale. For a more specific application of the principles, the court is referred to the following cases: Withers *v.* Patterson, 27 Tex., 496; Menifee *v.* Hamilton, 32 Tex., 510; Flanagan *v.* Pierce, 27 Tex., 78.

*W. P. & E. P. Hamblen*, for defendant in error.

DELANY, J. COM. APP.— Counsel for plaintiffs in error do not, in their brief, insist upon the fifth assignment of error, which questions the right of the original plaintiff, John M. Kuykendall, to the writ of *certiorari.* The statute in force at that time (Pasch. Dig., art. 480) provided that any person interested, who might desire to have the proceedings of the county courts pertaining to estates revised and corrected, might do so by application to the judge of the district court for the writ.

The position taken by counsel for the defendants below was, that the plaintiff, having sold the league of land before the filing of the suit, was not a person interested in the estate within the meaning of the statute, even though he may have repurchased the land before suit commenced. For in the latter case, they maintained he would hold the land, not as the heir of A. L. Kuykendall, but as a purchaser from J. B. Kuykendall. He was nevertheless a person interested within the meaning of the statute, as there was other property which he claimed as heir.

Counsel for plaintiffs in error present us with several propositions which we will consider, without, however, following the order in which they are presented:

1st. " The jurisdiction being established, all presumptions must be made in favor of what does not appear."

This rule is so well settled as to render its discussion unnecessary; but it is generally applied to cases in which the action of the court is called in question in some collateral proceeding. Illustrations of the rule, and of its general application, will be found in the cases of Alexander v. Maverick, 18 Tex., 179; Burdett v. Silsbee, and Dancy v. Stricklinge, 15 Tex., 557. In each of these cases, the sales made by the probate court were collaterally attacked. The purchasers had bought in good faith, and were strangers to the proceedings in the probate court. They had bought relying upon the judgment of a court of competent jurisdiction, and to protect their interests every reasonable presumption would be indulged in favor of the correctness of the court's action.

In Dancy v. Stricklinge, referred to above, Justice Wheeler, after referring to certain liberal presumptions which were made in the case of Townsend v. Munger, 9 Tex., 300, says: " It would not be going further to indulge a like presumption in the present case, when the authority of the administrator is thus collaterally brought in question, for the purpose of invalidating the title of a *bona fide* purchaser in a proceeding in which the administrator who might have had it in his power, had his authority been questioned in proper time, cannot be called in to show his authority to act in the premises."

In the case of Burdett v. Silsbee, 15 Tex., 617, the same learned judge remarks as follows: " If this were a suit or proceeding in which the authority of the administrator was directly instead of being collaterally drawn in question, it might be subjected to a severer scrutiny. But the case is different when his authority is thus drawn in question in a collateral action for the purpose of invalidat-

ing the title of a purchaser at the administrator's sale. When sales have been thus made, and confirmed by the judgment of a court of competent jurisdiction, it is well settled that the judgment, unless impeached for fraud, cannot be drawn in question in a collateral action."

In the case now before us, the proceeding was not collateral but direct. The purchaser at the sale was not a stranger, but was the attorney of one of the administrators, and was familiar with all the facts. He and the two administrators were brought before the court. Every opportunity for explanation was given. The charge was that the purchase was fraudulent, and that the purchaser had used the administrators as his instruments in perpetrating the fraud.

Upon this branch of the case counsel present this proposition: "The judgments of courts will not be set aside on mere surmises or suspicions; but there must be evidence to establish the fraud that does naturally and reasonably tend to that conclusion." 1 Story's Eq., sec. 190.

The correctness of this general proposition will not be questioned. But in the present case it was not to be expected that the plaintiff should produce full and ample proof. His case was grounded upon negative allegations. He averred that the estate of A. L. Kuykendall owed no debts; that there was no necessity for administration, and that the pretended debts were fabricated by the defendants in order to attain a sale of the property. These negative allegations he was required to support only by *prima facie* proof. 1 Greenl. Ev., sec. 78. This he did when he brought up the proceedings of the county court and showed by them that none of the defendants had in fact ever recognized the existence of any particular claim against the estate. Under the circumstances, we should naturally expect that the defendants would promptly rebut this *prima facie* case made by the plaintiffs. But the defendant Shipman, the only one who ever pretended to have any claim against the estate, does not even answer.

The defendant Davis denies all the allegations of fraud so far as he is concerned. The defendant Herndon, though answering at large on the law of the case, merely states, upon the facts, that the property was sold by the administrator, Davis, and that he had bought it in good faith and for a fair price; but he does not pretend that he had ever paid for it, or that he ever had any intention to do so. The defendants do not allege in their pleadings, or attempt to show upon the trial, that there were any real claims against the estate. In fact, the whole proceeding in the probate court has the

appearance of a private speculation at the expense of the estate, and the guiding hand of the defendant Herndon is visible throughout.

The facts established in this case resemble very much the facts alleged in the case of Finch v. Edmonson, 9 Tex., 504; and in the case of Alexander v. Maverick, 18 Tex., 194, Justice Wheeler says that in Finch v. Edmonson the sale was declared void on account of fraud. So, we think, should the sale be in the present case. The judgment should be affirmed.

AFFIRMED.

[Opinion approved January 18, 1883.]