## CITY OF DALLAS v. BERGFIELD.*
(No. 8793.)

(Court of Civil Appeals of Texas. Dallas. Nov. 11, 1922. Rehearing Denied Dec. 9, 1922.)

**1. Constitutional law ⬤➡281—Eminent domain ⬤➡167(3)—Statutory procedure for acquiring property for street purposes to be followed to avoid denial of due process.**

The law having provided a specific form of procedure for acquiring property for street purposes, any other method not so authorized cannot be upheld, for to do so would, in effect, be authorizing the taking of private property for public use without due process of law.

**2. Municipal corporations, ⬤➡474 — Special agreements omitting assessments against certain property owners affected by improvement rendered assessments void.**

Where city of Dallas passed ordinance providing for opening, widening and extending of streets in accordance with article 11, section 5, of its charter, but entered into special agreements with certain property owners affected by the improvement, whereby they were omitted from assessment, the legality of the proceedings was destroyed, and the levy of an assessment was ineffectual as to other property owners.

**3. Eminent domain ⬤➡242—Municipal corporations ⬤➡488, 489(5)—Findings of officials materially departing from statutory procedure not conclusive, and subject to collateral attack; illegality of proceedings to open street available to property owners when called on to pay assessments, without previous objection.**

Special commissioners appointed to open, extend, and widen streets having materially departed from the procedure provided by law, their findings were not conclusive, and were subject to collateral attack by asserting that the assessments made under the proceedings were illegal; and, notwithstanding complaining taxpayers did not pursue the remedy provided for before such special tribunal they were not prevented from objecting when called on for payment.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Actions by the City of Dallas against R. Bergfield consolidated. Judgment for defendant, and plaintiff appeals. Affirmed.

J. J. Collins, Allen Charlton, and Earl B. Callaway, all of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellee.

VAUGHAN, J. Many questions are presented by this appeal, but, as the disposition of same will depend upon one, to wit, the validity of the proceedings by and before the special commissioners appointed by the county court of Dallas county at law to assess the damages for the property to be taken to widen St. Paul and Elm streets, and to assess the cost of the improvement against the property in the immediate vicinity thereof and specially benefited thereby, and against the owners thereof, we will confine our discussion of the record to that question.

It may be conceded that all proceedings had for the purpose of opening and widening certain public streets, to wit, Elm and St. Paul, on, through and across the same in the city of Dallas, including the order appointing said commissioners, were authorized by and in conformity with law, and therefore legal.

With this statement we will proceed to discuss the proceedings had after the appointment and qualification of said special commissioners on the 23d day of April, A. D. 1913.

This suit was instituted by appellant in the form of two separate actions against appellee for the purpose of collecting special assessments theretofore levied in connection with the widening of Elm and St. Paul streets. The two suits were consolidated and, upon the trial of same in the court below, judgment was rendered for the appellee.

An ordinance was passed by the board of commissioners of the city of Dallas on April 9, 1913, ordering the condemnation of land located on the north side of Elm street belonging to J. C. Hooper, W. D. Hume, Jos. Weisman, J. F. Butler, Mrs. S. A. Gibbs, Dorsey Gibbs, Inez Gibbs, G. Wildy Gibbs, W. E. Easterwood, and C. S. Gray, and of certain lands located on St. Paul street owned by Mrs. S. A. Gibbs and Dorsey Gibbs, for the purpose of opening and widening Elm and St. Paul streets, public streets in the city of Dallas, and providing that the cost of such property when taken should be paid by the property owners owning property in the immediate vicinity of the respective streets and specially benefited thereby.

Appellant filed petitions against said property owners, respectively, in the county court of Dallas county at law, praying for the appointment of special commissioners for the purpose of determining the value of the land sought to be condemned for the widening of said streets and assessing the damages to accrue to said owners, if any, and for the purpose of determining the amount to be paid by the respective owners of property in the immediate vicinity, and specially benefited by the widening of said streets, as provided in the charter of the city of Dallas, and said ordinance of date April 9, 1913. The land desired to be condemned and taken for the purpose of opening and extending said

streets was properly described in said ordinance.

Sections 5 and 6 of said ordinance read as follows:

"That the said land herein desired to be taken for the purpose of opening and extending St. Paul street shall be used by the city of Dallas for the purpose of a public street which shall be 60 feet wide when so widened and extended.

"That proper proceedings for the condemnation and taking of the said respective tracts of land for the purpose herein stated shall be instituted before the judge of the county court of Dallas county at law, or the judge of the court having jurisdiction by law to act in condemnation proceedings for railroads rights of way in said Dallas county, and such property shall be taken and condemned in accordance with the provisions of the city charter of the city of Dallas, relating to the widening, extending, and opening of any street, and the cost of such property shall be paid for by the property owners owning property in the immediate vicinity of the respective improvements hereby ordered, and whose property is specially benefited thereby as provided by the terms of the city charter in such cases."

On said petitions being presented to the judge of said court on the 23d day of April, 1913, T. E. Jackson, J. Houston Bennett, and H. J. Curtis were appointed special commissioners, and duly qualified as such. Notice was duly issued by said special commissioners to, and served upon, all owners and persons having an interest in the land sought to be taken for the purpose of widening said streets, and to all persons owning or having an interest in all lands sought to be assessed for special benefits occasioned by said improvements, including appellee Bergfield, to be and appear before said commissioners on the 28th day of April, 1914, in the Commercial Club rooms in the city of Dallas, Dallas county, Tex., to show cause, if any they had, why the owners of such property and their property should not be assessed to pay the cost of opening and widening said streets, as well as to show whether or not the property so owned by them, respectively, was located in the immediate vicinity of such proposed improvements, and whether or not same would or would not be specially benefited and enhanced in value by reason of making such improvements.

On the 18th day of March, 1914, the city of Dallas, acting by and through W. M. Holland, its then mayor, made and entered into the following contract and agreement with Mrs. Sallie A. Gibbs, Dorsey Gibbs, owners named in said condemnation proceeding, and Karl Hoblitzelle, who claimed an interest in some of the land so sought to be condemned for street purposes:

"This agreement between the city of Dallas, a municipal corporation, hereinafter called 'the city,' party of the first part, Mrs. Sallie A. Gibbs and Dorsey Gibbs, hereinafter called 'owners,' parties of the second part, and Karl Hoblitzelle, hereinafter called 'lessee,' party of the third part, witnesseth:

"1. The owners, joined by lessee, for the purpose of widening Elm and St. Paul streets, in the city of Dallas, hereby dedicate to public use for streets and sidewalks the following lots, tracts or parcels of land in the city and county of Dallas, state of Texas, in five tracts hereinafter designated as tracts A, B, C, D and E, and described as follows: (Here follows description of the property owned by Mrs. Sallie A. Gibbs, Dorsey Gibbs and Karl Hoblitzelle and condemned by the city.)

"It is understood and agreed, however, that all improvements upon the tracts so dedicated are reserved by owners and lessee, as their respective interests now appear.

"2. The city shall save all parties to this agreement free and harmless from any assessments or costs for the widening of Elm or St. Paul streets, being charged against the remaining property of the other parties in said block; it being agreed that the dedication aforesaid is sufficient contribution for owners to make to such widening of said streets.

"3. The city agrees to pay to lessee a sum of money sufficient to cover the cost of the taking down of that portion of the improvements standing upon the premises dedicated to public use, as aforesaid, having due regard to tenants and the remainder of the improvements, and for causing to be rebuilt the exterior and interior of all such buildings along and upon the new street lines which will be established on Elm and St. Paul streets by the act of the city in accepting the premises here dedicated to public use, the buildings so reduced to be restored to a condition as good as before such changes, and for causing to be built new sidewalks and curbing in place of the sidewalks and curbing which shall be destroyed or rendered inappropriate by the widening of such streets, and for causing to be paved at its expense the extra width adjacent to or out of the property here dedicated and added to such streets between the curb lines, and for bearing the expense of removing and replacing street lighting in front of said property, and thereupon owners shall allow lessee to make such changes, and lessee shall make such changes, on demand of the city made at any time after August 1, 1914, at his own expense. Such payment by the city to lessee shall be made as soon as an amount sufficient to make such payment is collected under the assessments to be levied for the widening of said streets, but, if such amount is not collected on or before the 1st day of August, 1914, then the city agrees to advance the amount necessary therefor out of the general fund as provided by the city charter and make such payment on or before the 1st day of August, 1914.

"Witness the signatures of the parties hereto, at Dallas, Texas, this 18th day of March, 1914."

Said special commissioners on the 11th day of May, 1914, filed with the board of commissioners of the city of Dallas their report, which was approved and adopted on the same day by said board of commissioners; and, at the same time, the city attorney was directed to draw an ordinance levying a spe-

cial assessment against the property shown by said report to be in the immediate vicinity, and specially benefited and enhanced by virtue of the improvement, of such streets.

While the special commissioners were still engaged in the condemnation proceedings, and before they had made any report to the court or to the city of Dallas in such proceedings, appellant directly negotiated with and settled all matters of condemnation and assessments affecting the property included in such proceedings owned by Mrs. S. A. Gibbs and Dorsey Gibbs, and Hoblitzelle as a lessee, as shown by the written agreement, supra, of date March 18, 1914. By this contract Mrs. S. A. Gibbs and Dorsey Gibbs dedicated to public use for street purposes a strip 20 feet wide off their property, fronting on the north side of Elm street, and strips 12.7 feet and 17.3 feet, respectively, off their properties fronting on St. Paul street. The agreed consideration for the dedication of these properties was appellant's covenant to save such owners "free and harmless from any assessments or costs for the widening of Elm or St. Paul streets being charged against the remaining property."

The special commissioners placed no assessment whatever upon the properties of Mrs. S. A. Gibbs, Dorsey Gibbs, G. Wildy Gibbs, Inez Gibbs, or W. E. Easterwood. The exemption of the property of G. Wildy Gibbs, and Inez Gibbs from assessment was not based upon an exemption agreement between appellant and said parties; this exemption was occasioned by the commissioners erroneously assuming that such an agreement had been made between the parties, and, on that account, placed no assessment upon the 125 feet frontage owned by them. On August 19, 1914, after the condemnation and assessment proceedings were finished, the city attorney, by written report, called attention to the fact that no exemption agreement had been entered into with G. Wildy Gibbs and Inez Gibbs. This omission was perfected by deed of date September 12, 1914, executed by G. Wildy Gibbs to appellant, conveying the land belonging to him, and needed for the Elm street widening, for a consideration of $5,000. It may be assumed that the deed from G. Wildy Gibbs carried the property owned by Inez Gibbs involved in said condemnation proceedings as well as his own, as the amount paid was the consideration which the city attorney reported would be accepted in payment for the strips needed from both G. Wildy Gibbs, and Inez Gibbs.

The Easterwood exemption agreement is evidenced only in Easterwood's deed to appellant of date July 1, 1914, conveying the property owned by him and condemned by the city. It recites that it was in settlement of all differences between the city of Dallas and W. E. Easterwood, and was for the consideration of $1,760, the amount allowed by the city of Dallas for damages to the land of W. E. Easterwood; also an assessment against the Easterwood property on the opposite side of east Elm street, less 10 per cent. that the park board was paying all persons who paid their assessments by July 20, 1914. The special commissioners made no assessment upon the exempted Easterwood property—52 feet frontage. The commissioners awarded Mrs. S. A. Gibbs and Dorsey Gibbs for land owned by them taken for the widening of Elm and St. Paul streets $500, and awarded Karl Hoblitzelle, lessee of Mrs. S. A. Gibbs and Dorsey Gibbs, $24,267.78 as damages to the leasehold interest of said Hoblitzelle in and to said property. The commissioners awarded G. Wildy Gibbs and Inez Gibbs $6,600, and to Inez Gibbs, individually, $1,680. To Easterwood, $5,860. The city afterwards paid G. Wildy Gibbs and Inez Gibbs $5,000 and Dorsey Gibbs $11,000 out of its general fund, aggregating $16,000, in addition to the amounts awarded by the special commissioners to said parties.

The property frontage on the north side of Elm street between Ervay and Harwood streets prior to the street changes in connection with which the assessment sued for was made was 831 feet. The frontage included in the exemption agreement made by the city with Mrs. S. A. Gibbs, Dorsey Gibbs, and Hoblitzelle was 411½ feet. That included in the exemption to G. Wildy Gibbs and Inez Gibbs was 125 feet. That included in the Easterwood exemption was 52 feet, making an aggregate of 588½ feet. The property owned by C. S. Gray, with a frontage of 57½ feet, was acquired in its entirety by the city, and therefore was not subject to assessment. In other words, 646 feet of the north side of Elm street frontage escaped assessment, and only 185 feet of the north side of Elm street frontage between Ervay and Harwood streets was assessed.

On June 24, 1914, an ordinance was passed by the city commissioners, based upon the report of said special commissioners, levying a special tax upon property located in the immediate vicinity of said street improvements, and especially benefited thereby. This special tax was levied upon property owned by 59 different persons, firms, and corporations, including appellee. There was levied against the property owned by appellee on Live Oak street the sum of $820, and, as to a lot owned by him fronting on Live Oak street and Pacific avenue, the sum of $1,279.-20, on account of the increase in value of said property by virtue of said street improvement.

Trial of the case before the court without the intervention of a jury resulted in a judgment in favor of appellee, from which this appeal was duly prosecuted to this court.

It is contended by appellant that the judgment rendered is erroneous, because: (a) The report of the special commissioners, having been approved by the board of commissioners,

is conclusive as to what land should be assessed and the failure to assess the property of Gibbs and Easterwood is not open to review; (b) the filing of the report to assess the property in the immediate vicinity of Elm and St. Paul streets specially benefited by the widening of such streets, having been approved by the board of commissioners. is a conclusive and final determination that all property not assessed is not benefited or is not in the immediate vicinity; (c) the determination of the special commissioners as to what property is in the immediate vicinity and benefited is conclusive and final, the same having been approved by the board of commissioners; (d) the evidence and pleading failing to indicate that appellee appeared before the special commissioners and made any objections, he is now precluded from attacking the assessments; (e) the evidence being sufficient to support a finding that the making of the agreements with Gibbs et al. to except them from assessments in view of the conveyance of certain lands to widen Elm and St. Paul streets, and the carrying out of such agreements, resulted in a reduction of the assessment to appellee, it will be presumed by the court that the net result of such departure from the charter procedure (if any) was beneficial to appellee; (f) it not appearing that the omission to assess Gibbs et al. and the giving of land by them increased the assessment of appellee, he will not be heard to complain of same; (g) the power to assess existing, no complaint of improper procedure will be heard from a party not injuriously affected thereby; (h) the evidence conclusively showing that a strict conformity with the charter would have increased appellee's assessment he cannot be heard to complain of any departure therefrom which reduced the assessment.

On the other hand, appellee contends: (a) That the legal effect of the settlement of date March 18, 1914, between appellant and Mrs. S. A. Gibbs, Dorsey Gibbs, and Karl Hoblitzelle, supra, was to terminate the condemnation and assessment proceedings; (b) that the intentional omission from all assessment of the properties in the immediate vicinity of the street improvements which belonged to Mrs. S. A. Gibbs, Dorsey Gibbs, G. Wildy Gibbs, Inez Gibbs, and W. E. Easterwood operated to invalidate the assessment upon appellee's property; (c) that the assessment proceedings substantially departed from the statutory method prescribed to be followed in making such assessments, and such irregularities were fatal to the validity of the assessments; (d) that said settlement of date March 18, 1914, had the effect of making all assessments upon properties reported by said special commissioners to have been benefited by said street improvement illegal and unenforceable; (e) that the awards of the special commissioners are so unequal and discriminatory, as a result of leaving out the properties covered by said agreements with Mrs. S. A. Gibbs, Dorsey Gibbs, Hoblitzelle, and Easterwood, as to invalidate the assessments made upon appellee's property.

[1] The law having provided a specific form of procedure for acquiring property for street purposes, any other method not so authorized cannot be upheld, for to do so would, in effect, be authorizing the taking of private property for public use without due process of law.

The proceedings reflected by the record, by which appellant sought to condemn porperty for the purpose of widening St. Paul and Elm streets, was upon a plan not authorized by the law, but in direct violation of the plain requirements of same, in so far as appellant relieved the properties owned by Mrs. S. A. Gibbs, Dorsey Gibbs, and Easterwood located in the immediate vicinity of such street improvement, and specially enhanced in value by such improvement, from bearing its just proportion of the assessment to pay for such improvement commensurate with the benefits accruing to such property. The properties owned by Mrs. S. A. Gibbs, Dorsey Gibbs, and Easterwood involved in said condemnation proceedings are situated on Elm street, in the heart of the district to be improved by the widening of Elm and St. Paul streets, and no other property was more improved by the widening of Elm street that these properties.

The authority to condemn property for street purposes is conferred upon appellant by article 11, § 5, of its charter, which, in part, reads:

"The board of commissioners shall have the power to appropriate private property for public purposes whenever the board of commissioners of said city shall deem it necessary to take any private property, either within or without the city limits, for any of the following purposes: In order to open, extend, change, or widen any public street, avenue, or alley; * * * such property may be taken for such purpose by making just compensation to the owner thereof. If the amount of such compensation shall not be agreed upon, it shall be the duty of the board of commissioners to cause to be stated in writing the real estate or property known, and the purpose for which said property is sought to be taken, and file such statement with the judge of the county court of Dallas county at law, or the judge of the court having jurisdiction by law, to act in condemnation proceedings for railroad rights of way, in said county at the time of such proceeding. Upon the filing of such statement, it shall be the duty of such judge, in term time or vacation, to appoint three disinterested freeholders and qualified voters of the county of Dallas as special commissioners to assess the damages to accrue to the owners by reason of such condemnation. The special commissioners so appointed shall, in their proceedings, be governed and controlled by the state laws in force in reference to the condemnation of

rights of way for railroad companies, and the assessment for damages therefor, the city of Dallas occupying the position of the railroad. * * * In estimating the damages to such property, the jury shall not only estimate the value of the land so taken, but shall also estimate the damage done to the remainder of any land from which it is taken by reason of such taking and use; provided, however, that, in case of condemnation of land for the opening, extending or widening of any street within the corporate limits of the city, the board of commissioners may, by ordinance, provide that the cost of such property shall be paid for by the property owners owning property in the immediate vicinity thereof and benefited thereby. * * * Said special commissioners shall determine the value of the property decided to be taken belonging to the different owners thereof, if there be more than one such owner, and if there be only one such owner, the value of the same, and shall also find how much the cost thereof shall be assessed against the owner of each lot or subdivision of the land in the immediate vicinity thereof, specially benefited and enhanced in value by making of such improvements, and shall report all such matters to the board of commissioners of the city of Dallas, showing a description of the property taken and condemned and the names of the owners thereof; * * * describing such property so as to identify it against which special assessment should, in the judgment of said board, be made to pay for such property condemned, such apportionment shall be made according to the benefits that will, in the judgment of said special commissioners, be received by or accrue to such lot or subdivision of property by reason of the making of such improvements herein."

We only quote that portion of said section 5 bearing upon the decisive question presented by this appeal.

The ordinance ordering condemnation as adopted by the city commissioners was in accordance with said charter provision. Condemnation proceedings are purely statutory, and often harsh in the application of the law authorizing them. Therefore all power and authority to act in the matter of condemning land for the purpose of widening Elm and St. Paul streets, as exercised by the special commissioners appointed for that purpose, if not precisely authorized by law, cannot be sanctioned by the courts.

[2] The appellant, having determined that it was necessary to improve the above-named streets by widening same, invoked the aid of the courts to put into motion the authority of the law to accomplish such purpose. The rights of all parties involved in such special proceedings were necessarily before and to be determined by said special commissioners; such rights being so interrelated as to make it necessary for said commissioners to pursue with each property owner whose property was involved the method pointed out by the law authorizing the taking of such private property for public use.

In Boylston v. Boston, 113 Mass. 528, the

245 S.W.—48

court, in discussing a special assessment similar to the one under investigation, held that such a charge, although local and special in its character, must be assessed upon all the estates benefited and liable, so that each should bear an equal proportion; that the law provided it should be assessed by a responsible board of officers, who act quasi judicially, and that a performance of such a trust could not be dispensed with or abridged by any agreement of the city, and that it could not be delegated to any one else, and that it would be, if possible, a still greater departure from its legitimate obligations for the city to select one or more of the benefited estates and make them the subjects of separate settlements by virtue of which they were omitted from the assessment. This, we think, applies with peculiar force to the facts developed by this record. See McQuillan on Municipal Corps. §§ 1377 and 2023.

It was not the rights of appellant being invaded, but the rights of private citizens being appropriated for the public good. Therefore it was not for appellant to dispense with any of the proceedings required by law to be followed in the course of reaching a conclusion on the part of said special commissioners with reference to the several matters the law required to be performed by them. Having thus invoked the proceedings authorized by law to condemn land for the purpose sought by appellant, it was incumbent upon appellant to pursue such method throughout in order to legally condemn the land of the owners involved in such proceedings.

As was well said by the court in the case of Smadbeck v. Mt. Vernon, 124 App. Div. 515, 109 N. Y. Supp. 70:

"If the controversy were between the city and each landholder separately, then the differences might be adjusted by arbitration, but when a way was laid out under a betterment law by which it became the duty of designated officials to determine the question of benefit and to assess accordingly in proportion, the assessment was in the nature of a tax which must be laid proportionately upon all of the property benefited; that the officers acting are, as public officials in a quasi judicial capacity, not subject to the direction or control of the town, and that the town cannot abridge or limit the rights of the designated officers or exonerate the owner of benefited land from the liability to be assessed."

The act on the part of appellant in contracting with Mrs. S. A. Gibbs, Dorsey Gibbs, Hoblitzelle, and Easterwood, whereby the several properties owned by them were withdrawn from such condemnation proceedings before such special commissioners, had the effect to destroy the legality of the proceedings with reference to their property appropriated under the ordinance authorizing such condemnation proceedings. In other words, the power of appellant to lay this special

tax against appellee being purely statutory, the enabling statutes must be strictly pursued without departure from the substance thereof in order to make the levy effectual. Vrana v. St. Louis, 164 Mo. 146, 64 S. W. 180; Rackliffe v. Duncan, 130 Mo. App. 695, 108 S. W. 1110; Hassan v. Rochester, 67 N. Y. 529; People v. Reis, 109 App. Div. 748, 96 N. Y. Supp. 600; Paret v. City of Bayonne, 39 N. J. Law, 559; Simmons v. Millville, 75 N. J. Law, 177, 66 Atl. 895; Kutchin v. Engelbret, 129 Cal. 635, 62 Pac. 215; In re City of Seattle, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862.

The charter of the city of Dallas does not confer upon appellant the power to make any such contract as was made with Mrs. S. A. Gibbs, Dorsey Gibbs, Hoblitzelle, and Easterwood, whereby it undertook to exempt their property from assessment, and, in the absence of a statute authorizing appellant to make contracts for exemption or commutation from local assessment, appellant had no power to make such contracts. 1 Paige & Jones on Taxation by Assessment, § 616. As passed, the improvement ordinance was sufficient upon its face to confer jurisdiction to carry out the condemnation proceedings, but, when carried into effect as modified by the terms of the agreement with Mrs. S. A. Gibbs and others, it became void in its operation and further proceedings thereunder were not in conformity with the law governing same.

Appellee and other property owners had the right to presume that their rights involved in such condemnation proceedings would be protected by the assessment of damages and the levy of the special tax provided by law so as to equally distribute the burdens between all alike. Chicago v. Shepard, 8 Ill. App. 602. And, inasmuch as the law prescribes a specific manner for the taking over of property by special proceeding for the purpose of appropriating same for public use, it must follow, by well-understood rules of construction, that such method forbids the condemnation from being done in any other way. Ayer v. Chicago, 149 Ill. 262, 37 N. E. 57.

To sanction the novation from the proceedings authorized by law, as attempted in the instant case, would inevitably lead to favoritism, and, perhaps, corruption; to say the least of it, would open the door not only to suspicion, but would give cause to the rise of great dissatisfaction, and subject public officials to severe criticism, which is always the case more or less when there is a departure from the rules of procedure prescribed by law. As the law hath declared and pointed out the way, so should the acts of public officials be moulded and guided, especially when dealing with a statute authorizing the invading of private rights for the public good.

[3] The special commissioners having not only failed to perform the duty imposed upon them by law, but having materially departed therefrom, their findings are not conclusive, and were subject to be collaterally attacked on the ground that the assessment made under such proceedings was illegal, and, notwithstanding appellee did not pursue the remedy provided for before said special tribunal, the illegality of the proceedings prevents such failure from being a bar to the right to assert the invalidity of same when called upon to pay the assessment so made; same being the basis for the levy of the tax sought to be enforced. Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162; Wooten v. Texas Bitulithic Co. (Tex. Civ. App.) 212 S. W. 248; 2 Paige & Jones on Taxation by Assessment, § 1337; Robertson Lbr. Co. v. City of Grand Forks, 27 N. D. 556, 147 N. W. 249,

The conclusion reached by us on what we consider to be the controlling issue makes it unnecessary to discuss the other assignments presented by appellant. This leads to an affirmance of the judgment of the court below.

Affirmed.