## CITY OF DALLAS et al. v. SAENGER et al.
### (No. 8984.)

(Court of Civil Appeals of Texas. Dallas. Oct. 27, 1923. Rehearing Denied Nov. 24, 1923.)

**1. Municipal corporations ⬤=>491—Charter requirement of hearing to owner as to improvement assessment mandatory.**

Dallas Charter, art. 10, § 1, subsec. H, providing for hearing to property owner subject to assessment for improvement, is mandatory, and makes it the duty of the board, when objection in writing has been filed, to give such owner opportunity to produce evidence, to appear in person, and guarantees a hearing before an assessment is authorized.

**2. Municipal corporations ⬤=>491—Owner of land abutting improvement denied "hearing" guaranteed by charter.**

Where an attorney for a property owner appeared before the board of commissioners of a city and made oral protest against a paving assessment on plaintiff's property, and was assured that the board would hold a session at 10 o'clock in the morning of the following day, and he could file a written protest at that time, and would be accorded a hearing, the action of the board in overruling his protest at an earlier hour was a denial of the hearing guaranteed by Dallas Charter, art. 10, § 1, subsec. H, and action of the board fixing the assessment was void.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Hearing.]

**3. Municipal corporations ⬤=>488, 489(2)—Owner signing request for improvement not estopped to contest validity.**

Property owners in signing request for a street improvement could assume that the guaranty of Dallas Charter that cost assessed against property shall not exceed the benefits would be observed, and they are not estopped to contest its validity.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Mrs. Bertha Saenger and others against the City of Dallas and another. From an order granting an interlocutory injunction, defendants appeal. Modified and affirmed.

James J. Collins and Dabney, Goggans & Ritchie, all of Dallas, for appellants.

E. E. Hurt and Nathaniel Jacks, both of Dallas, for appellees.

JONES, C. J. The city of Dallas, under the provisions of its charter and amendments thereto, ordered the pavement of the southern portion of Holmes street, and entered into contract with Central Bitulithic Company to lay a bitulithic pavement and curbing along the portion of the street to be paved. Mrs. Saenger owned a block of land fronting on Holmes street 1,314 feet. The costs assessed against the Saenger property was $9,097.84 as its proportionate share for the entire work included in the contract with the paving company. The city took all of the necessary steps required by the charter to fix and make a valid assessment against appellees for the street improvement contemplated by the contract, and to fix a valid lien against the Saenger property, unless there was a failure to give appellees the hearing guaranteed them under the charter as to the justice and validity of the assessment intended to be made against their property, which question will be discussed later herein.

On November 3, 1922, appellees filed this suit to enjoin appellants from proceeding with the paving contract and from clouding appellees' title to their property by placing any character of lien against same for said amount of $9,097.84. It was alleged in the petition filed that appellees' land was low and swampy, regularly subject to overflow from the Trinity river, and was unfit for residence or industrial property, and that, in effect, the value of the entire body of land was not more than the cost of the paving assessed against it, and, if appellants were permitted to do the paving and fix the lien, it would amount to a confiscation of appellees' property, and would be a taking of their property for public purposes without giving them any compensation.

The appellants answered by general demurrer, special exceptions, and allegations that all matters necessary to show a valid assessment for the paving and the fixing of a valid lien against said property had been taken by the city, and also that the suit was not brought within the time allowed by the charter of the city for bringing such suits.

Upon the filing of the petition the court notified appellants to appear at a named date to show cause why a temporary injunction should not issue. On the day named there was a hearing, and the court entered an order directing the issuance of the injunction on appellees' filing a bond in the sum of $1,000 conditioned as required by law. This order was entered on November 22, 1922, and, the bond having been filed and approved, the injunction issued in conformity with the court's order. From this interlocutory order appellants duly perfected their appeal, and by appropriate assignments of error challenge its correctness.

Subdivision I, § 1, of article 10 of the charter of the city of Dallas provides, in effect, that, before the board of commissioners of the said city can by ordinance make an assessment against the several owners of property, and against their property abutting upon the public highway ordered to be improved, for the cost of such improvement as

⬤=>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is adjudged by said board against said respective owners and their property, notice shall be given to said property owners of the amount per front foot proposed to be assessed against abutting property, together with a general description of the contemplated improvements, giving the time and place said property owners may be heard in reference thereto. It is also provided in subsection H of said section 1 of article 10 of said charter that—

"On the day stated in the notice aforesaid, or any time thereafter before closing the hearing, any person * * * subject to assessment for the purpose of paying the cost of any improvement in whole or in part shall be entitled to a hearing before said board of commissioners as to all matters affecting said property or the benefits thereto of such improvements, or any claim of liability or objection to the making of such improvements, or invalidity or irregularity in any of the proceedings with reference to making said improvements, or any objections thereto. Such persons * * * shall file objections in writing and thereafter the board of commissioners shall hear and determine the same, and full opportunity shall be given to the persons, firms or corporations filing said objections to produce evidence and to appear in person or by attorney; and a full and fair hearing thereof shall be given by said board of commissioners, which hearing may be adjourned from time to time without further notice."

Subsection J of said section 1 of article 10 requires that any suit contesting in any way the validity of the assessment shall be filed within 10 days after the completion of said hearing, and, if an objecting property owner does not file his contesting suit within said period of 10 days, it is provided that he shall be forever barred from any contest of the validity of the assessment of the lien against his property.

Appellees' petition is sufficient in its allegations to show that through the means of contemplated street improvements appellants will virtually confiscate appellees' property without adequate compensation. The facts elicited in evidence at the trial of the case abundantly sustain the allegations to the effect that appellees' property would not be enhanced by the improvement in an amount even approaching the amount of the assessment made against it. In fact, it would not be an unwarranted conclusion to draw from the evidence that, after the improvements were completed, the value of appellees' property would not be in excess of the lien for the improvements assessed against it. If, however, appellees were accorded the very important right of a full and fair hearing before the board of commissioners of the city, and, after such full and fair hearing, the board of commissioners, by resolution, as was done in this case, made the assessment, appellees have placed themselves in such position as seemingly they would have no remedy

either in law or in equity. This for the reason that the courts of this state have held similar provisons as to the one contained in subdivision J of section 1 of article 10 of the charter of the city of Dallas, providing that any suit contesting the assessment must be filed in 10 days after the conclusion of the hearing as a valid and reasonable provision. Dillon v. Whitley (Tex. Civ. App.) 210 S. W. 329; City of Corsicana v. Mills (Tex. Civ. App.) 235 S. W. 220; Elmendorf v. San Antonio (Tex. Civ. App.) 223 S. W. 631; Jones v. City of Houston (Tex. Civ. App.) 188 S. W. 688.

The record in this case shows that all the other provisions of the said charter providing the manner of creating a contemplated debt for street improvements against the owner of abutting property and the fixing of a valid lien against his property for such debt had been taken by the city in conformity to these provisions; and the record further shows that this suit contesting the validity of this assessment was not filed until more than 60 days had elapsed after the board of commissioners had adjourned the hearing provided for in the said city charter. The contention of appellants must be sustained if appellees were given the hearing contemplated by the said charter provision. If they were not given such hearing, then the limitation period of 10 days has no application, for this limitation provision in the city charter is based upon the presumption that all of the steps required by the charter to be taken preliminary to fixing lien on property had been complied with by the city in conformity to the charter provision, and that a valid debt has been created against the complaining property owner and a valid lien fixed against his property, unless same shall be set aside by the courts. In the instant case no such debt or lien was fixed because of the failure to give to appellees the said hearing.

[1, 2] The charter provision in respect to this hearing is mandatory. It makes it the absolute duty of the board of commissioners, when objection to the contemplated assessment in writing has been filed by a complaining property owner, to give to such property owner full opportunity to produce evidence, subpœna witnesses, and to appear in person or by attorney, and guarantees to him a full and fair hearing before the board of commissioners is authorized to make the assessment against him and against his property. This duty rests with the commissioners' court so long as the time for hearing is open. This record discloses that, while the hearing was open, and this duty was resting upon the board of commissioners, appellees' attorney called upon the board of commissioners, or an officer of same, and made an oral protest against the assessment to be made upon appellees and their property, and

asked time to prepare the written protest required by the statute. He explains that he did this just as soon as he had been authorized to make this protest by appellees, his clients residing in another state. He was assured at this time that the board would hold a session on the morning of the next day, at 10 o'clock, and that he could file his written protest at that time, and would be accorded his hearing. He had a right to rely upon this promise, and was not negligent in waiting until the next day to file the written protest. According to his testimony, this attorney appeared before 10 o'clock on the next morning with his written objection and delivered it to the city secretary for filing. He was then informed that the board of commissioners had had an earlier session that morning, and had overruled his oral protest. This evidence is undisputed, save that the indorsement on this written protest states that it was filed at 1:30 of that day. This is by no means conclusive of the fact that it was presented to the city secretary for filing at the time testified to by this attorney. If it was so presented, the time of filing would date from the time of such delivery, and not from the time the file mark was placed thereon.

We conclude that this action of the board of commissioners was a denial to appellees of the hearing guaranteed them by the charter provisions of the city, and that this necessary requirement, in order to fix a valid debt against appellees and a valid lien against their property, was not had in this case. The right of being heard by a complaining property owner in matters of this kind is not to be treated lightly. It vitally concerns such property owner, and, in the instant case, it amounted to practically a hearing on whether or not appellees' property would be confiscated. If the complaining property owner is not accorded this right, at least to an extent that could be considered reasonable, neither the letter nor the spirit of the charter provision in this respect is carried out. City of Dallas v. Bergfield (Tex. Civ. App.) 245 S. W. 749. As this hearing is a condition precedent to fixing the debt and lien, the subsequent action of the board of commissioners in passing a proper resolution fixing the assessment becomes null and void. On a subsequent date the board of commissioners took cognizance of the writ-

ten protest filed by appellees through their attorney and entered an order denying it. This action was taken, so far as this record shows, without any notice to appellees or their attorney that any action would be taken on it, and appellees were again denied the hearing contemplated by the charter provision guaranteeing them a full and fair hearing, and this second order on appellees' protest does not avail appellants anything in reference to the validity of the assessment.

[3] It is contended that because appellees signed a request for the contemplated street improvement they are estopped now to contest its validity. There is no merit in this contention. The charter of the city guaranteed to appellees that the cost assessed against them and their property "shall not exceed the amount of the special benefit in enhanced value which such property shall receive from such improvement." When appellees signed the request for the pavement, they had the right to assume that this guaranty to them would be observed. We therefore hold that the record on this appeal does not show that a valid lien was fixed against appellees' property, and that, if the work of street improvements was permitted to be made, it would place a cloud on the title to appellees' property, in that it would, prima facie, fix a lien upon the said property, and that the temporary writ of injunction was properly issued by the trial court.

The case is therefore affirmed.

On Motion for Rehearing.

In their motion for rehearing appellants insist that the temporary restraining order granted by the trial court is too broad, in that it not only restrains appellants from carrying out the contract they entered into for paving said street in front of the property of appellees abutting on Holmes street, but restrains them from carrying out the contract on any other portion of Holmes street. When the injunction order is read as a whole, we do not believe it is subject to such construction; but, in order that there may be no question in reference thereto, we modify the injunction order so as to cause it to apply only to carrying out that portion of the contract which by its terms would place a lien upon appellees' property.