## UVALDE PAVING CO. et al. v. CRABB et al.
(No. 3534.)

Court of Civil Appeals of Texas. Texarkana. April 20, 1928.

Rehearing Denied May 10, 1928.

1. **Municipal corporations** ⬅️513(7)—**Evidence held insufficient to show fraud of town council in failing to give promised notice of further proceedings affecting local improvement.**

Evidence *held* insufficient to establish fraud of town council in failing to give promised notice of any further action in local improvement proceedings to abutting owners.

2. **Municipal corporations** ⬅️297(1)—**Property owner, presenting objections to proposed street improvement, is chargeable with notice of subsequent official proceedings of council.**

A property owner, appearing and presenting his objections to a proposed street improvement, is charged by law with notice of relevant official proceedings of the council which thereafter occur.

·3. **Municipal corporations ⬅298—Mayor's and council member's promise to give protesting property owners notice of further proceedings held mere gratuity, and nonperformance no bar to further appropriate orders.**

Agreement of mayor and member of town council to give property owners, objecting to street improvement, notice of further proceedings had by council, *held* a mere gratuity, such that failure to keep promise did not deprive council of its power to make further appropriate orders for the improvement.

4. **Municipal corporations ⬅513(1)—Assuming that council was bound by promise of notice to protestants of further proceedings, want of notice did not warrant injunction against issuance of paving certificates to innocent third party, paving contractor.**

Assuming that council was bound by promise to give protesting property owners notice of further proceedings relative to street improvement, failure to give such notice did not warrant injunction against issuance of paving certificates to paving contractor having no notice of such promise.

5. **Judgment ⬅15—Judgment procured by fraud is not void, as without jurisdiction, but only voidable.**

A judgment, even when procured by fraud, is not void for lack of jurisdiction in the court, but only voidable.

6. **Municipal corporations ⬅302(1), 444—That protesting property owners were unfairly deprived of right of appeal in improvement proceedings will not make city council's action void.**

That objecting property owners were unfairly deprived of their right of appeal in street improvement proceedings did not render final action of city council void for lack of power to pass ordinance for street improvement and levy tax complained of.

7. **Judgment ⬅27—Judgment procured by unfair methods, but after statutory requirements essential to jurisdiction have been complied with, will not be disturbed, to injury of innocent third persons.**

When statutory requirements essential to the exercise of jurisdiction have been complied with, a judgment procured by unfair methods will not be disturbed, where to do so would cause injury to innocent third persons.

8. **Estoppel ⬅72—He who trusts most must suffer most on breach of trust.**

In dealing with the results of a breach of trust, the rule in equity is that he who trusts most must suffer most.

On Motion for Rehearing.

9. **Municipal corporations ⬅514(4)—Statute held not to authorize reassessment to correct errors of judgment in amount of benefits (Rev. St. 1925, art. 1095).**

Rev. St. 1925, art. 1095, authorizing reassessment for purpose of correcting errors or mistakes in proceedings essential to a valid assessment for an improvement, does not authorize reassessment to correct errors of judgment in the amount of benefits assessed, and hence paving contractor could object to reassessment, if it appeared that compensation to which it was entitled would be materially reduced by a reassessment. ·

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Suit by Stanley Crabb and others against the Uvalde Paving Company and others. Decree for plaintiffs, and defendants appeal. Reversed and rendered.

Lanham Croley, Oscar D. Montgomery, and Holland, Bartlett, Thornton & Chilton, all of Dallas, for appellants.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellees.

HODGES, J. This appeal is from a final judgment restraining the town of University Park from issuing paving certificates which would constitute a lien on property belonging to the appellees. In July, 1925, the city council of University Park determined to pave certain designated streets, and an ordinance to that effect was adopted. The ordinance provided for levying a portion of the expense on the abutting property owners; and August 4, 1925, was fixed as the date for a hearing of objections by property owners. For some reason no meeting of the council was held on that date, and the hearing was postponed till August 7 at 8 o'clock p. m. The appellees Crabb, Cave, and Phelps, who owned property abutting on the streets to be paved, appeared before the council at the appointed time and presented their protests and objections to the paving project. They allege, in their application for a writ of injunction, in substance as follows:

That after the protests were made the mayor and the city council informed plaintiffs that, if the property owners did not want the paving in front of their property, the town did not want it, and the project would rest in abeyance; that the mayor, the council, and the city attorney stated that, if the city should decide to proceed any further with the paving project, the plaintiffs and other interested property owners would be given an opportunity to make further objection, and that notice of such hearing would be given by mail to plaintiffs in adequate time; that plaintiffs were thereby led to believe that the project would be abandoned, and that, if anything further was done, they and the other property owners would be notified. Plaintiffs then left the hearing, feeling secure in the belief that the proposed assessment would be abandoned. They allege that on the 8th of July, 1926, the appellees Crabb and Phelps learned for the first time that their protests had been overruled, an assessment had been made, and the paving was almost completed

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under a contract with the Uvalde Paving Company; that they had no notice that their protests had been overruled, and a contract had been entered into with the paving company, until that time. They made no inquiry as to the proceedings of the council, because of the representations that the project would probably be abandoned, and, if it were not, they would be notified. They further allege that they did not have an opportunity to be fully and impartially heard, and that the assessment is greatly in excess of the benefits to their property. They pray for a writ of injunction perpetually restraining the town of University Park from issuing paving lien certificates, and that the purported lien and assessment be canceled.

The appellants, the Uvalde Paving Company and the town of University Park, answered by general and special demurrers and general and special denials. The Uvalde Paving Company pleaded the regularity of the proceedings of the council, its lack of notice of irregularities, and estoppel. In a supplemental petition the appellees allege that they were intentionally misled by the mayor and other city officials, and were thereby deprived of an opportunity to prosecute an appeal from the decision of the council within the time allowed by law.

The following is the substance of the testimony introduced by the plaintiffs in the trial.

Crabb testified that he owned property on one of the streets to be improved; that he appeared before the city council at its meeting held on the night of August 7, and through an attorney presented a written protest in which was stated his objection to the proposed pavement; that protest was introduced in evidence. The principal objections stated in the protest were that the paving was unnecessary, too expensive, and would entail a tax against his property largely in excess of the benefits to be derived. Crabb also testified as follows concerning statements made by some members of the city council:

"As to the general nature of the statements there, it was to the effect that, if the paving wasn't wanted by the property owners—seemed to be a majority of those streets that didn't want it—why, they were willing to drop it. The man who was the presiding officer made the statement that, if the property owners didn't want the paving, certainly the town of University Park wasn't interested to the extent to go ahead with it, and they would drop it."

He further testified that one alderman concurred in that statement.

Appellee Phelps testified that he owned property on one of the streets to be improved, and appeared at the time above mentioned, and objected to the paving project. He further stated:

"Now, as to whether or not there was anything said about the project being abandoned or carried forward after these protests were all in, the man at the head of the table—the mayor, I presume—stated that routine business would be taken up; that they were through with the property owners; everybody has been heard; and the question was asked specifically by Mr. Bowyer [Crabb's attorney] if further actions were taken on it, if the property owners would be notified, and the answer was that they would."

He further testified:

"I spoke of Mr. Smith, the mayor. He, for one, said that; and Mr. Montgomery [a member of the city council] was more emphatic, according to my recollection. And the statement that was made by Mr. Smith, the mayor, was made, according to my recollection, in the early part of the discussion. As to what he said, his statement was that he understood that the property owners wanted it, and that's why the council took it up; that the council thought they were favoring the community on account of the representations which had been made to the council if they would pave it, and if they didn't want the paving, why, that was another matter entirely. That was the substance of the statement he made."

He also testified that he lived approximately a mile and a half from the street to be improved.

Appellee Cave testified that he owned property abutting on one of the streets to be improved, and appeared with the others to join in the protests against the paving. He testified, substantially, as did the others regarding the statements made by the mayor and a member of the city council. It also appears from the evidence that the appellees left the meeting soon after they had presented their objections and before the city council adjourned.

The minutes of the council were introduced in evidence, and show the following proceedings on the night of the hearing:

"The city council was called to order by Mayor J. Fred Smith. Alderman Giles, Lewis, Hall, Gillion and Montgomery were present. The hearings on Crescent Parkway, Front street and Shenandoah were opened, and property owners gave their views as to the matter. Messrs. Stanley Crabb, A. C. Cason, John Muse, and Dr. Cave made objections to the assessment as given in the notices sent out to property owners. It was moved, seconded, and carried that the hearing of property owners on the paving of these streets in St. Andrews Place be left open until after 30 days."

The minutes of the meeting of September 15, 1925, were as follows:

"The city council of University Park met in regular session, with Mayor J. Fred Smith presiding. * * * The hearing on the Front street, Shenandoah street, and St. Andrews Drive paving assessments, which had been opened on August 4 and were continued to August 7, and at the meeting of August 7 had been continued for 30 days, was closed by unanimous vote."

The testimony of the city secretary, the mayor, and the city attorney was to some extent in conflict with the testimony of the appellees as to what occurred at the hearing on August 7. At the later meeting of the city council, held on September 15, an ordinance was introduced, and afterward passed, providing for letting the contract to pave the designated streets, for levying a tax against the abutting property owners, and the issuance of paving certificates for the amount of the tax. The certificates authorized provided that such tax should be a lien against the property abutting on the streets to be paved.

It appears from the record that, in making the improvements, the town of University Park was proceeding under the provisions of chapter 9, of title 28, of the present Revised Civil Statutes. Article 1090 provides:

"Subject to the terms hereof, the governing body shall have power by ordinance to assess the whole cost of constructing sidewalks or curbs, and not to exceed three-fourths of the cost of any other improvement, against the owners of property abutting on such improvement and against their abutting property benefited thereby, and to provide for the time and terms of payment of such assessments and the rate of interest payable upon deferred payments thereon, which rate shall not exceed eight per cent. per annum, and to fix a lien upon the property and declare such assessments to be a personal liability of the owners of such abutting property; and such governing body shall have the power to cause to be issued in the name of the city, assignable certificates declaring the liability of such owners and their property for the payment of such assessments and to fix the terms and conditions for such certificate. If any such certificate shall recite that the proceedings with reference to making such improvements have been regularly had in compliance with law, and that all prerequisites to the fixing of the assessment lien against the property described in said certificate and fixing the personal liability of the owner have been performed, such certificate shall be prima facie evidence of the facts so recited."

Article 1094 provides for a hearing for the benefit of those property owners who are to be affected by the tax to be imposed to pay the expenses of the improvements. Article 1096 is as follows:

"Any property owner, against whom or whose property any assessment or reassessment has been made, shall have the right within twenty days thereafter, to bring suit to set aside or correct the same, or any proceeding with reference thereto, on account of any error or invalidity therein. But thereafter such owner, his heirs, assigns or successors, shall be barred from any such action, or any defense of invalidity in such proceedings or assessments or reassessments, in any action in which the same may be brought in question."

The injunction in this case is sought upon the ground that the final ordinance letting the paving contract to the Uvalde Paving Company and making the tax levy was void.

The invalidity asserted is not based upon the failure of the council to comply with any statutory requirements which should precede the adoption of an appropriate final ordinance, but upon the failure of the council to give the appellees actual notice of the time when that final action would be taken. It is apparently conceded that the statutory notice of the time and place when property owners might appear and present their objections had been given. If that fact is not conceded the evidence conclusively shows that it was done. It is not contended that the law required the council to give appellees any additional notice, but that the council agreed to give further notice and failed, and because of that failure the appellees were misled and thus deprived of their legal right to appeal to the courts. In their supplemental petition they charge, in effect, that the failure to give that notice was in pursuance of a fraudulent scheme to deprive them of an opportunity to resort to the courts for relief from the action of the council.

[1] We have no hesitancy in saying that the evidence is insufficient to establish the charge of fraud. Under the proof in this case it would be going a long way to hold that the council, as an official body, was bound by the informal statements of the mayor and a member of the council, made during the discussion with the property owners. Certainly the evidence does not warrant the conclusion that the council definitely then determined to "drop" the street improvement project. It is equally as clear that the appellees did not leave the meeting with the understanding that the project had been "dropped." The most they can claim is that they were induced to believe that if any further proceedings took place they would be notified. The record shows that following the hearing a motion was adopted postponing further action on the matter for 30 days.

[2, 3] There is no reason why the appellees did not know of the adoption of the motion, except that they were not then present, and failed to make any subsequent inquiry as to what had been done. When a property owner appears and presents his objections to a proposed street improvement, as was done in this instance, he is charged by law with notice of the relevant official proceedings of the council which thereafter occur. The agreement of the mayor and a member of the council to give further notice was a mere gratuitous promise made for the accommodation of the appellees. The failure to comply with such promise did not deprive the council of its power to make further appropriate orders in furtherance of the street improvement project.

[4-6] But, conceding that the council, as an official body, was responsible for the promise to give notice and acted in bad faith in misleading the appellees, it does not follow that

this writ of injunction should be granted. The situation would be similar to proceedings in a court where a judgment by default is taken against a defendant, contrary to an agreement that he should have notice when his case was called. The judgment rendered in such cases, even when procured by fraud, is not void for lack of jurisdiction in the court, but only voidable. Murchison v. White, 54 Tex. 78; Mikeska v. Blum, 63 Tex. 44; Crawford v. McDonald, 88 Tex. 632, 33 S. W. 328. It may be that in this instance the appellees were unfairly deprived of their right of appeal; but that unfairness does not render the final action of the city council void for lack of power to pass the ordinance and levy the tax complained of. As in the case of unfair judicial proceedings, the aggrieved party may be entitled to relief, when application therefor is made before the rights of third parties become involved. 6 Pomeroy, Equity Jur. § 650.

[7] But, when the statutory requirements essential to the exercise of jurisdiction have been complied with, a judgment procured by unfair methods will not be disturbed, where to do so would cause injury to innocent third parties. De Garcia v. S. A. & A. P. Ry. Co. (Tex. Civ. App.) 90 S. W. 670; Martin v. Robinson, 67 Tex. 368, 3 S. W. 550, 557. A court of equity will not, in such cases, cause an injury to one innocent party in order to relieve another whose rights are no greater. The principle applied in judicial proceedings is not different from that which should control in the disposition of this case.

[8] The innocent third party in this instance is the Uvalde Paving Company, one of the appellants. It took the contract to make the street improvements, and completed the work under the terms of an ordinance which the council had the power to adopt, and without notice of any deception or bad faith. If the certificates are canceled, the paving company will lose the cost which it incurred in making the improvements, while the appellees will be permitted to enjoy whatever benefit has resulted from the paving in front of their property. It is true they express a willingness to pay a reasonable sum for those improvements, but they tender no amount as a condition for the granting of the writ of injunction. To any such offer, if made, the paving company might reply that it would not have done the work for that sum. In dealing with the results of a breach of trust, the rule in equity is that he who trusts most must suffer most.

We are of the opinion that the writ of injunction should not have been granted. The judgment of the trial court will therefore be reversed, and judgment here rendered in favor of the appellants.

## On Motion for Rehearing.

[9] In the motion for a rehearing it is contended that the cancellation of the paving certificates issued to the Uvalde Paving Company does not necessarily deprive that company of adequate compensation for the services it performed in making the street improvements in front of the property of the appellees. As supporting that contention, reference is made to article 1095 of the Revised Civil Statutes, which is as follows:

"The governing body of any city shall be empowered to correct any mistake or irregularity in any proceedings with reference to such improvement, or the assessment of the cost thereof against abutting property and its owners, and in case of any error or invalidity, to reassess against any abutting property and its owner the cost or part of the cost of improvements, subject to the terms hereof, not in excess of the benefits in enhanced value of such property from such improvement, and to make reasonable rules and regulations for a notice to and hearing of property owners before such reassessment."

That article has no application to a situation like that disclosed by the facts in this case. The statute quoted was intended to authorize a reassessment for the purpose of correcting errors or mistakes in proceedings essential to a valid assessment, not to correct errors of judgment in the amount of the benefits assessed. An appeal to the courts is the proper method of securing relief from excessive assessments. In the proceeding here complained of there was no error or mistake requiring a reassessment. All the property owners had been legally notified of the hearing to be held; they appeared at that hearing and presented their objections to the paving scheme. After that hearing the council had the power to render its decision overruling the objections presented, without any further notice. After having completed the work the paving company could legally object to a reassessment of benefits to property owners which would reduce its compensation to an amount less than the contract price upon which the work was done, unless the council had omitted some legal requirement essential to a valid assessment.

The paving company would be charged with notice of errors of that kind. But it is not charged with notice of failure to comply with a voluntary agreement, made by members of the council not required by law. It is not necessary to hold that the company would lose the entire cost of paving in front of the property of the appellees in order to allow the company the protection which an innocent third party may claim. It is sufficient if it appears from the evidence that the compensation for which the company agreed to do the work would be materially reduced by a reassessment. If the contract price would not be materially reduced by the reassessment, then there is no good reason why a court of equity should interfere and cancel the certificates issued under the contract upon which the work was completed.

The case of City of Dallas v. Saenger (Tex. Civ. App.) 255 S. W. 652, referred to by counsel, involves an entirely different state of facts, and is not in conflict with the decision in this case.

The motion is overruled.